193 N.J. Super. 47 (1983)
472 A.2d 150
EUGENE E. MORI, PLAINTIFF-APPELLANT,
v.
HARTZ MOUNTAIN DEVELOPMENT CORP., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 9, 1983.
Decided December 2, 1983.
*49 Before Judges MICHELS, KING and DREIER.
Hartman, Schlesinger, Schlosser, Faxon & Foy, for appellant (Alfred A. Faxon, III, of counsel and on the letter brief).
Horowitz, Bross, Sinins & Imperial, for respondent (Vincent J. Rubino, Jr., and Phillip R. Patton, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Eugene Mori (Mori) appeals from a summary judgment of the Law Division entered in favor of defendant Hartz Mountain Development Corp. (Hartz).
The procedural history giving rise to this appeal is helpful to a resolution of the issues raised by Mori. On April 19, 1979, Mori filed a petition for bankruptcy in the United States District Court under Chapter XII of the Bankruptcy Act. Hartz thereafter filed an application seeking to vacate the automatic stay incident to the bankruptcy proceedings and to obtain authorization to proceed in the Superior Court of New Jersey for the partition of property, located in Secaucus, New Jersey, which the two parties held as tenants in common. Mori owned an undivided 1/12 interest, and Hartz an undivided 11/12 interest in this property. The fee interest in the property was encumbered by a lease which extends through April 30, 2033. Hartz, however, in October of 1979 obtained an assignment of the lessee's *50 interest in this tract of land. On October 29, 1980 the United States Bankruptcy Court for the District of New Jersey on December 29, 1980 granted Hartz's motion.
Hartz then filed a Complaint in the Chancery Division seeking a judgment permitting it to obtain Mori's interest in the property by tendering to him the fair market value of said interest or, alternatively, compelling the sale of the property with the proceeds to be divided in accordance with the parties' respective interests. Copies of the summons and complaint were sent by regular mail to Mori at the Florida address which had been furnished to Hartz and by certified mail to Mori's attorney in the bankruptcy action. The copy sent by regular mail never returned, and the copy sent certified mail was refused by his attorney. Hartz, pursuant to R. 4:4-5 then applied for, and on February 19, 1981, was granted an order permitting service by certified mail. Service by certified mail was made February 26, 1981. Mori failed to answer or to otherwise appear. A default was entered against Mori on April 15, 1981. On June 5, 1981, the trial court entered a final judgment by default compelling a sheriff's sale of the subject property. Mori thereupon filed a motion seeking to cancel the sheriff's sale and vacate the default judgment on the basis that proper service had not been effected. This motion was denied. Mori subsequently appealed this denial (Default Appeal) and sought to stay execution of the judgment ordering a sheriff's sale of the property. We denied the stay pending appeal.
The sale of the property was held on August 6, 1981, at which Hartz, as the sole bidder, purchased the property at a price of $437,000 for the entire fee interest. Mori then moved to set aside the sale alleging (1) that the sale was improperly conducted; (2) there were no bona fide bidders for the property; and (3) that the sales price was grossly inadequate. The trial court denied the motion seeking to set aside the sale and confirmed the sale of property. Mori thereupon filed an appeal from this determination (Sale Appeal) and concurrently sought to stay the confirmation order pending appeal, which we denied. The default *51 appeal and the sale appeal were consolidated and on June 23, 1983 the orders under review were affirmed by this court. Hartz Mountain Development Corporation v. Eugene E. Mori, A-5321-80T1 and H-266-81T1.
On or about January 27, 1982, while the default and sale appeals were still pending, Mori filed this action in the Law Division. In the first count of the complaint, Mori alleged that Hartz, as assignee of the prior tenant's interest under the lease, had defaulted by failing to pay rent owing to him under the lease agreement. Mori further alleged that in accordance with the terms of the lease agreement the tenancy was terminated by notice furnished Hartz in a letter dated February 19, 1981. Mori therefore demanded judgment physically partitioning the property and giving him possession of his 1/12 interest, or alternatively, for damages equal to the value of his interest. In the second count, Mori sought to recover 1/12 the present value of the entire rental due through its termination date in accordance with the lease's default provisions. After issue was joined, Hartz moved for summary judgment on the ground that Mori's claims were barred by the judgment below, and, to the extent that it sought unpaid rents, should be dismissed since such claim constituted a mandatory counterclaim and, as such, was required to have been raised in the prior proceeding. Mori thereupon moved for leave to amend the complaint to add a third count seeking a judgment: (1) declaring the lease to have been terminated; (2) setting the date of the termination; and (3) fixing damages for improvements to the leased property allegedly destroyed by Hartz. Judge Connors in the Law Division granted Mori's application permitting the third count to be added to his complaint, and then granted Hartz's motion for summary judgment as to all counts in the complaint as amended. He reasoned in part that all of these issues should have been raised by either "answering counterclaim, set off counterclaim [or] permissive counterclaim" and therefore, Mori was now barred *52 from litigating these claims by the entire controversy doctrine. We agree and affirm.
R. 4:27-1(b) of our Court Rules requires that:
Each party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by application of the entire controversy doctrine.
Closely related to R. 4:27-1(b) is R. 4:7-1 which, with respect to mandatory counterclaims, states:
A defendant ... failing to comply with R. 4:27-1(b) (mandatory joinder of claims) or failing to set off a liquidated debt or demand or a debt or demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such claim or for such debt or demand which might have been so set off.
Although our court rules did not reflect the entire controversy doctrine until subsection (b) of R. 4:27-1 was adopted in 1979, the doctrine was well established at common law. Thus, it is noted in the Comment to R. 4:7-1 that R. 4:27-1(b) "does not undertake to define the parameters of the doctrine as that is a matter most appropriately left to judicial evolution." Pressler, Current N.J.Court Rules, Comment R. 4:7-1 (1983).
The entire controversy doctrine evolved as an incident of the merger of law and equity accomplished by our Constitution of 1947 and, more specifically, Art. VI, § 3, par. 4 thereof, which states:
[T]he Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined.
The entire controversy doctrine "requires that a party litigate all aspects of a controversy in a single legal proceeding." Leisure Technology v. Klingbeil, 137 N.J. Super. 353, 357 (App.Div. 1975). "Under this doctrine the `entire controversy,' rather than its constituent causes of action, is the unit of litigation and joinder of all such causes of action is compulsory under penalty of forfeiture." The Malaker Corp. v. First Jersey National Bank, 163 N.J. Super. 463, 496 (App.Div. 1978), certif. denied 79 N.J. 488 (1979). This is true "even where the belatedly asserted cause of action is an independent one, in the sense of itself being *53 separately adjudicable." Id. The doctrine's purpose is "to eliminate delay, prevent harassment of a party and unnecessary clogging of the judicial system, avoid wasting the time of parties and effort of the parties, and promote fundamental fairness." Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 556 (1981), quoting Barres v. Holt, Rinehart and Winston, Inc., 74 N.J. 461, 465 (1977) (Schreiber, J., dissenting).
The seminal opinion with respect to this doctrine is Ajamian v. Schlanger, 14 N.J. 483 (1954), certif. denied 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954) wherein Justice Brennan set forth the following statement:
Notable among the reforms introduced by the Judicial Article of the 1947 Constitution and the implementing rules of court is the fusion of the powers of Law and Chancery in one Superior Court functioning within a simple and flexible procedural framework designed and purposed for the just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants. It is a fundamental objective of this procedural reform to avoid the delays and wasteful expense of the multiplicity of litigation which results from the splitting of a controversy. [14 N.J. at 485].
It is therefore the rule in this state that "a defendant must assert all matters which will defeat a claim against him and a plaintiff must seek complete relief for vindication of the wrong he charges." Applestein v. United Board and Carton Corp., 35 N.J. 343, 356 (1961). See Falcone v. Middlesex County Med. Soc., 47 N.J. 92, 93 (1966); Massari v. Einseidler, 6 N.J. 303 (1951). See also Tevis v. Tevis, 79 N.J. 422, 434 (1979); Silverstein v. Abco Vending Service, 37 N.J. Super. 439, 449 (App.Div. 1955).
Here, Mori in the first count of his complaint seeks a judgment dividing the property and granting him possession of his 1/12 interest, or alternatively, damages equal to the value of his interest. In the second count of his complaint, Mori seeks to recover the present value of 1/12 of the entire rental due on the lease through its termination date. It is plain that the present value of the rental due is "a liquidated debt or demand", and, as such, was required by R. 4:7-1 to have been set off as a mandatory counterclaim in the earlier action instituted by *54 Hartz. Having failed to do so, this claim is forfeited. Likewise, the alternative demand for the value of its property interest set forth in the first count is now barred, as the value of this interest was "capable of being ascertained by calculation." R. 4:7-1.
In his third count, added to the complaint by way of amendment, Mori seeks a judgment: (1) declaring the lease to have been terminated; (2) setting the date of termination; and (3) fixing damages for Hartz's "wanton and wrongful" destruction of improvements to the property. Recognizing that the demand for partition set forth in the first count, as well as Mori's request for judgment declaring the lease to have been terminated and fixing said termination date are not liquidated demands which must be set off under R. 4:7-1, and assuming Mori's claim for punitive damages is not a sum "capable of being ascertained by calculation," these claims must still be deemed to have been forfeited under the entire controversy doctrine. As recognized in Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 293 (App.Div. 1977), certif. denied 75 N.J. 528 (1977), "the entire controversy doctrine requires a significantly broader scope of compulsory claim joinder than is prescribed by the limited mandatory counterclaim rule, R. 4:7-1." In the Blanchard case, supra, we set forth the boundaries of the doctrine's application as follows:
As a practical matter, the doctrine cannot be dealt with on an a priori basis. It must be applied empirically. That is to say, an evaluation must be made of each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day. If those consequences are likely to mean that the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not that component constitutes either an independent cause of action by technical common-law definition or an independent claim which, in the abstract, is separately adjudicable. [150 N.J. Super. at 293-294].
*55 The claims here asserted by Mori were clearly a part of the entire controversy between the parties. Hartz's obvious purpose in instituting original action against Mori was to obtain complete ownership of the subject land and, to this end, Hartz sought and was granted a judgment compelling a sheriff's sale of the property. If Mori sought to defeat Hartz's objective of obtaining complete ownership of the property by instead compelling physical partition of the property, the viability of such physical division should have been raised in the earlier litigation. Further, the existence of a lease on the subject property was clearly a part of the "bundle of rights and liabilities" required to have been disposed of as a component part of the prior litigation. Here all claims asserted involve a single tract of land and all relate to the rights and liabilities of the parties with respect to this land. As such, they constitute component parts of a single unit of litigation, which, not having been raised, are now forfeited. Cf. Wm. Blanchard Co. v. Beach Concrete Co., Inc., supra, 150 N.J. at 294-295.
In attempting to escape the bar of the entire controversy doctrine, Mori relies on the fact that the earlier judgment compelling the sale of the property was entered upon his default. He cites and summarizes several New Jersey cases to support his argument that the entire controversy doctrine is to be applied only where a party fully participated or had the opportunity to fully participate in the earlier litigation. No such requirement is set forth by the cases or court rule. Essentially, what Mori attempts to do by this argument is to borrow from the principle of collateral estoppel the requirement that an issue must be "actually litigated" and inject this requirement into the entire controversy doctrine. However, both the scope and purpose of the entire controversy doctrine differ from that of the doctrine of collateral estoppel. The difference in scope is exemplified by the court's statement in Gareeb v. Weinstein, 161 N.J. Super. 1, 13 (App.Div. 1978), that, when applying the collateral estoppel doctrine,

*56 the inquiry must always be as to the point or question actually litigated and determined in the original action  not what might have been thus litigated and determined  for it is only upon such matters as were actually litigated that the judgment is conclusive.
On the other hand, the entire controversy doctrine applies not only to matters actually litigated, but to all aspects of a controversy that might have been thus litigated and determined. Further, while the objective of collateral estoppel is to ensure judicial finality, see Allesandra v. Gross, 187 N.J. Super. 96, 103 (App.Div. 1982), the objective of the entire controversy doctrine is, as set forth earlier, "to eliminate delay, prevent harassment of a party and unnecessary clogging of the judicial system, avoid wasting the time of parties and effort of parties and promote fundamental fairness." Aetna Ins. Co. v. Gilchrist Brothers, Inc., supra, 85 N.J. at 556. In a situation where these purposes are served the entire controversy should be invoked, notwithstanding that a default judgment has been entered. Indeed it may be argued that it is in many such instances that the purposes of the doctrine are most clearly served, for an excusable default is easily vacated. See Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App.Div. 1964), aff'd 43 N.J. 508 (1964). Such is the case here. Mori, with full knowledge of the earlier litigation, withheld his legal fire. The implications of the entire controversy doctrine with respect to a defendant who delays in asserting his claims are well illustrated by William Blanchard Co. v. Beach Concrete Co., supra. There, we applied the doctrine in a multi-party, multi-issue commercial case, in part, stating:
Accordingly, and consistent with the demands of a modern and responsive civil justice system, the application of the doctrine requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding. It is only that bar which can effectively prevent the evil of "* * * piecemeal litigation of fragments of a single controversy." [150 N.J. Super. at 292-293 (citation omitted)].
Similarly, in The Malaker Corp. v. First Jersey National Bank, supra, plaintiffs were held to be barred from asserting certain claims by reason of their failure to assert these claims in an *57 earlier litigation. In that earlier litigation the bank had sought and obtained a judgment against the Malaker Corporation and the Malakers personally to recover repayment of loans previously advanced. Shareholders of the corporation subsequently instituted suit against the bank as defendant asserting various affirmative claims. Concluding the entire controversy doctrine applied to bar this subsequent action, we commented:
We have not been provided with an explanation of why plaintiffs tarried with their causes of action until the latter part of 1974, after disposition of the bank's state court litigation ... [When they were aware of all relevant facts at the time of the earlier litigation.]
* * * * * * * *
Whether or not the present matters were intentionally withheld for tactical reasons or inadvertently omitted, the result must be the same. Plaintiffs were offered a forum in which to submit their claims; they asserted some, although not the ones which we now hold barred. Their failure to plead and litigate concerning matters then known to them in complete adjudication of a controversy in suit forecloses them from doing so now. [163 N.J. Super. at 500].
Applying these principles here, it is abundantly clear that the trial court properly held that Mori's claims were barred by the entire controversy doctrine. Accordingly, the summary judgment under review is affirmed.