**MERRITT LOGAN, INC.**

v.

**FLEMING FOODS OF PENNSYLVANIA, INC.**

**In re MERRITT LOGAN, INC., Debtor in Possession.**

Civ. A. No. 91–7401.
Bankruptcy No. 87–00550F.
Adv. No. 91–0805.

United States District Court, E.D. Pennsylvania.

Feb. 27, 1992.

Lawrence Corson, Corson, Getson & Schatz, Philadelphia, Pa., for plaintiff.

Edward C. German, German, Gallagher & Murtagh, Philadelphia, Pa., Marc Alan Krefetz, Cherry Hill, N.J., for defendant.

Merritt Logan, pro se.

## MEMORANDUM OPINION AND ORDER

VAN ARTSDALEN, Senior District Judge.

Defendant's motion to dismiss plaintiff's adversary complaint raises the issue of the preclusive effect of a judgment rendered in a previous adversary proceeding. For the reasons discussed below, defendant's motion will be granted in part and most claims raised by the complaint will be dismissed. The remaining claims will be best adjudicated by the bankruptcy court, so the proceeding will be remanded back to the bankruptcy court.

## PROCEDURAL HISTORY

Merritt Logan, Inc. (Logan) filed a voluntary petition in bankruptcy under Chapter 11 on February 3, 1987. Logan's major creditor was Fleming Foods of Pennsylvania, Inc. (Fleming). On February 25, 1987, Logan filed an adversary complaint against Fleming and several other defendants. On March 24, 1987, Fleming filed its proof of claim.[1] On April 23, 1987, on motion of defendants, the adversary proceeding was transferred to the district court. Fleming did not raise its proof of claim as a counterclaim in the adversary proceeding. On October 13, 1987, Logan filed a motion to amend the complaint, which was granted on November 9, 1987. On November 17, 1987, Logan filed its amended complaint.

The case proceeded to trial before me on November 14, 1988. The verdict of the jury, based on special interrogatories, was returned on December 6, 1988. After the

---

1. Apparently, Fleming filed two proofs of claim, identical except one was secured and the other unsecured. I will use the singular to refer to both.

dust had settled from post-trial motions, appeals, and cross-appeals, judgment was entered in favor of Logan in the amount of $1,550,000.00. On September 15, 1989, while the appeals were pending, Logan filed (in bankruptcy court) an objection to Fleming's proof of claim, alleging that the claim was barred under Federal Rule of Civil Procedure 13, as a compulsory counterclaim which should have been brought in the adversary proceeding. On January 16, 1990, the bankruptcy court held that the Bankruptcy Rules governed the adversary proceeding before me.[2] Therefore, the bankruptcy court held that Bankruptcy Rule 7013 controlled the compulsory counterclaim issue, rather than Federal Rule of Civil Procedure 13(a). Rule 7013 provides an exception for situations like Fleming's, and the proof of claim was not, therefore, barred.[3]

The entire proceeding now threatened to begin again. On September 3, 1991, Logan, represented by new counsel, filed an amended objection and counterclaim to Fleming's proof of claim. Logan also filed a new adversary complaint asserting the same allegations as those raised in its counterclaims to Fleming's proof of claim. The reference was again withdrawn. Currently pending before me is Fleming's motion to dismiss Logan's adversary complaint, or, in the alternative, for summary judgment, on the ground that the complaint is barred by res judicata.

Fleming's motion and Logan's response raise interesting issues of res judicata. I must first determine which law to apply to determine the preclusive effect of the judgment rendered in the first adversary proceeding.[4] Once I have resolved the choice of law issue, it will be necessary to apply the law and determine which, if any, of the current claims for relief are precluded. Lastly, Logan raises issues unique to bankruptcy law, as well as some equitable concerns, which must be considered.

"Res judicata" is sometimes used to encompass the entire field of law governing the preclusive effect of prior judgments. It is also used to describe merely the area of claim preclusion, leaving "collateral estoppel" to describe issue preclusion. It is in this latter sense that I use the term.

## CHOICE OF LAW

■ The first complaint[5] was based entirely on state law causes of action. Jurisdiction was based on bankruptcy jurisdiction. The complaint stated several counts under New Jersey contract and tort law.

Fleming argues that New Jersey res judicata law applies to the dispute before me. It claims that "Logan must not be permitted to now disavow New Jersey law having urged its application in the prior action in order to attempt to make 'new' causes of action available." (Reply Memo, p. 6.) The substantive law of one jurisdiction may apply while another jurisdiction's procedural law applies. For example, in this very case, I applied New Jersey substantive law and federal procedural law.[6]

The substantive/procedural distinction does not resolve the problem either. Issues of claim preclusion have both substantive and procedural elements. Logan rightly notes that "the issue of which jurisdic-

---

2. *In re Merritt Logan, Inc.,* 109 B.R. 140 (Bankr. E.D.Pa.1990).

3. For the text of Bankruptcy Rule 7013, see page 28, *infra.*

4. Logan, in order to distance itself from its first action, refers to that action as the "Morgan Action," signifying that Morgan, Lewis & Bockius represented it at that time. Logan cannot, however, disclaim its original complaint merely because it is dissatisfied with the work of its prior counsel. The complaint was *Logan's,* not Morgan's, and shall be referred to as the "first complaint" or "original complaint."

5. By "complaint," I mean the amended complaint on which litigation proceeded, not the initial complaint, unless otherwise noted.

6. While the parties and I believed we were using the Federal Rules of Civil Procedure, the Bankruptcy Court held that we were using the Bankruptcy Rules. This holding was possible because there was no relevant difference between the Federal Rules and the Bankruptcy Rules which were applied. Whether one views the procedural rules applied as the Federal Rules of Civil Procedure or the Rules of Bankruptcy Procedure, it is clear that New Jersey procedural law was not applied.

tion['s claim preclusion] law applies is not easily resolved." (Memo in Opp., p. 5, n. 6.) Logan further notes that there is a lack of uniformity in determining which res judicata law applies when both actions were brought in federal court under diversity jurisdiction. The problem is compounded by the fact that these actions were brought in federal court under bankruptcy jurisdiction.

The Third Circuit recently had an opportunity to determine which law of claim preclusion applied in successive diversity actions. *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960 (3d Cir.1991). The court stated that

> there is some disagreement in the courts of appeal over whether federal or state law of claim preclusion governs in successive diversity actions. It appears that the majority of appellate courts apply federal law, at least where the issues are not 'clearly substantive.'
>
> ... In several cases we have applied state law of preclusion when faced with successive diversity suits, but in none of these cases did we discuss the choice of law issue. In *Hartmann v. Time, Inc.*, 166 F.2d 127, 138 (3d Cir.1947) *cert. denied*, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948), we held that state res judicata rules governed in successive diversity actions. However, [that case was] decided before *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) and *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), established the current framework for determining which state rules are 'substantive' for purposes of the *Erie* doctrine.

*Lubrizol*, 929 F.2d at 962–63 (citations omitted, footnote omitted). While the Third Circuit found it unnecessary to resolve the issue, it had laid the framework for the analysis which must be conducted.

■ *Hartmann v. Time, Inc.*, 166 F.2d 127 (3d Cir.1947), is the appropriate place to begin. The plaintiff had filed his libel suit in the Pennsylvania Court of Common Pleas and it was subsequently removed to federal court. He had also brought five other suits in various state and federal forums, all based on the same defamatory act. The defendant claimed that dismissals in the New York state court and District Court for the District of Columbia barred the current action on grounds of res judicata. The Third Circuit stated, in dicta, that Pennsylvania res judicata law governed the dispute, rather than federal res judicata law.[7] This result would not be reached today, because it is established law that the res judicata effect of a prior state court judgment[8] is to be determined by the law of that state. *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir.1988) (applying 28 U.S.C. § 1738, the Full Faith and Credit statute). Thus, New York and District of Columbia res judicata law, respectively, would be controlling.

■ In our situation, however, we cannot rely on the Full Faith and Credit statute, because the first judgment was not rendered in state court. If it had, we would be bound to apply New Jersey res judicata law. I must determine how much credit a federal court should give its own judgment, rendered on state causes of action pursuant to bankruptcy jurisdiction.

The *Lubrizol* decision further directs the inquiry into the progeny of *Erie*. *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), sets out a two-stage inquiry for determining if certain rules are procedural or substantive for *Erie* purposes. First, the court should look at the rule in question and see if it is so bound up with state-created rights and obligations that the federal court *must* apply it. Second, in the absence of other considerations, federal courts should conform to state rules where the rules may bear substantially on the

---

7. This was dicta because the New York and D.C. dismissals were based on their respective statutes of limitations. Since the dismissals were not on the merits, res judicata did not apply.

8. For full faith and credit purposes, the District Court for the District of Columbia is considered to be a quasi state court. *Washington Gas Light Company v. Hsu*, 478 F.Supp. 1262 (D.Md.1979).

question of whether the litigation would come out differently in federal court than state court if the federal court applied federal law.

■ The first question is a complex one. Is New Jersey claim preclusion law so bound up with New Jersey-created rights that a federal court must apply it to New Jersey causes of action? At first glance, one might respond in the negative. New Jersey has codified its preclusive res judicata doctrine of entire controversy as a procedural rule of court. N.J. Rule of Civil Practice 4:30A. However, merely labelling the rule as procedural does not answer the question. Though New Jersey codified the rule as a procedural one, it had been part of the New Jersey common law since the fusion of Law and Equity. *Mori v. Hartz Mountain. Dev. Corp.*, 193 N.J.Super. 47, 472 A.2d 150, 153 (App.Div.1983).

One might argue that New Jersey developed its relatively harsh law of preclusion to balance its relatively liberal causes of action. While New Jersey may allow some new or unique causes of action, it only gives "one bite at the apple." In this sense, the claim preclusion rule is bound up with the state substantive law; to allow New Jersey substantive claims to proceed, without binding a plaintiff by the preclusion law, would be a misuse of New Jersey law.

While the above argument perhaps can be inferred from the state of New Jersey law, no New Jersey court has explicitly stated it. Instead, New Jersey justifies its entire controversy doctrine with much of the same arguments used to explain res judicata in general: to eliminate delay, to prevent party harassment and unnecessary clogging of the system, to prevent wasting of time, to promote fundamental fairness, et cetera. *Mori*, 472 A.2d at 153. Given that New Jersey has not yet connected its unusual claim preclusion law to its liberal substantive law, the first *Byrd* factor does not compel application of New Jersey law.

■ Would the litigation come out differently if litigated in New Jersey court? First, we must determine to which litigation this test should be applied. That is to say, are we to be concerned with different outcomes if *this* litigation were brought in a New Jersey court, or if the *original* litigation were?

■ The Full Faith and Credit statute guarantees that the second forum does not effect the res judicata law applied when the initial lawsuit was a state judgment. Courts have extended this reasoning to federal court judgments. The general rule is that a judgment rendered by a court of competent jurisdiction should have the same preclusive effect wherever it is taken. *E.g., Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 591 A.2d 592, 598 (1991).

Each judgment, either federal or state, should have the same preclusive effect as it has in the jurisdiction which rendered it. My concern, then, should be with determining the preclusive effect of a federal judgment based on state law.

The *Byrd* inquiry should therefore focus on the first lawsuit, not the second. That is, as I am determining the preclusive effect of a federal court judgment rendered on state law grounds, I must inquire as to whether the preclusive effect of that judgment would be different had it been rendered in state court as opposed to application of federal preclusion law. New Jersey applies a stricter res judicata law than the federal courts. Therefore, some suits would be barred by the application of New Jersey law, which would not be barred by the application of federal law. Following federal law would lead to a different result (more claims would proceed) than the application of New Jersey law.

In *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court held that differing outcomes between the application of state and federal law should not be the determinative concern. Instead, one must consider the policies behind *Erie*. We need to look for *substantial* differences, those which would encourage forum shopping or result in inequitable administration of the law. This explanation of *Byrd*'s second factor again

weighs toward the use of New Jersey's claim preclusion law in this case.

At issue in *Hanna* was service of process. Application of the federal procedural rules, as opposed to the state rules, would be outcome-determinative at the current stage in the proceedings, as the service made was sufficient under federal law, but not state law. However, application of federal law would not be outcome-determinative in a more general sense. It would not encourage forum shopping. It would, instead, merely compel one type of service over another.

This case is different. Application of federal res judicata law to the original case would be outcome-determinative in the most basic sense. If New Jersey law is applied, the claims are barred under the entire controversy doctrine, whereas application of federal law may allow them to proceed. Clearly a plaintiff would be encouraged to "shop" for a federal forum in which to bring his lawsuit which would have stricter preclusive effect under state law. This is, therefore, the type of substantive influence on outcome which is sufficient to compel application of state law in the absence of overriding considerations.

In *Lubrizol*, the Third Circuit noted that the majority of appellate courts apply federal res judicata law in successive diversity cases. The reasoning followed is that " 'one of the strongest policies a court can have is that of determining the scope of its own judgments. It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity.... We think it would be a strange doctrine to allow a state to nullify the judgments of federal courts....' " *Lubrizol*, 929 F.2d at 962, n. 2, quoting *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir.1962). This reasoning was not adopted by the Third Circuit and I am free to disagree with it. There is no Federal Rule of Civil Procedure which governs res judicata.[9] Applying state res judicata law would not undermine the Federal Rules of Civil Procedure. It would not affect the application of the Federal Rules at all. Instead, it would prevent the application of a federal common law doctrine.

Nor am I advocating that "the effect of a judgment of a federal court [is] governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity." Instead, I believe that the effect of a judgment of a federal court is governed by the law of the jurisdiction whose substantive law provided the cause of action on which the judgment was rendered. If the first suit took place in New Jersey court, Full Faith and Credit would attach New Jersey's claim preclusion law to that judgment—no matter to which court it was later taken. It is this element of res judicata, the element which attaches to a state court judgment, which compels application of state law in this case. When this court rendered its first judgment, it was entering judgment on a New Jersey cause of action. New Jersey claim preclusion law should attach to the judgment entered on this cause of action.[10]

---

**9.** If the federal common law of res judicata was codified as a Federal Rule of Civil Procedure, there would be a presumption that Congress was within its rights to enact such a rule, and unless it clearly was beyond the scope of the Enabling Act, it would control the dispute before me. *Hanna*, 380 U.S. at 471, 85 S.Ct. at 1143. To the extent the court's holding in *In re Windsor Communications Group, Inc.*, 54 B.R. 414 (Bankr.E.D.Pa.1985) relied on the presence of Federal Rule of Civil Procedure 18(a) as a Federal Rule governing res judicata, I disagree. Rule 18(a) merely states that joinder of *all* claims is permissive, it remains silent on which claims must be brought or be precluded.

**10.** Logan mentions, in passing, that perhaps Pennsylvania claim preclusion law should govern this dispute. While I tend to doubt the logic behind applying the res judicata law of the forum state in a diversity action, I am not, in any event, forced to do so. If I held that Pennsylvania claim preclusion law governed, I would be holding that res judicata is substantive for *Erie* purposes, yet procedural for choice of law purposes. This would not be an unconstitutional result. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988). *Sun Oil* held that it was not unconstitutional for a Kansas court to apply Kansas' statute of limitations to a cause of action governed by other states' substantive law, even though statutes of

## NEW JERSEY'S ENTIRE CONTROVERSY DOCTRINE

■ New Jersey's entire controversy doctrine precludes a litigant from bringing any related claim against an adversary after one such claim has already been litigated. This doctrine bars the second claim even if it is based on an independent cause of action.

> If the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not the component constitutes either an independent cause of action by technical common-law definition or an independent claim which, in the abstract, is separately adjudicable.

*Melikian v. Corradetti,* 791 F.2d 274, 279–80 (3d Cir.1986), quoting *William Blanchard Co. v. Beach Concrete Co.,* 150 N.J.Super. 277, 375 A.2d 675, 683–84 (App.Div.), *certif. denied,* 75 N.J. 528, 384 A.2d 507 (1977). *See Mori v. Hartz Mountain Dev. Corp.,* 193 N.J.Super. 47, 472 A.2d 150, 153 (App.Div.1983); *O'Shea v. Amoco Oil Co.,* 886 F.2d 584, 590–91 (3d Cir.1989); *Printing Mart–Morristown, Inc. v. Rosenthal,* 650 F.Supp. 1444, 1447 (D.N.J.1987), *aff'd,* 856 F.2d 184 (1988).

■ Logan and Fleming, in the briefs submitted in this case, spent a great deal of time comparing Logan's first complaint with its current complaint. From even a cursory comparison, it is clear that the claims raised in the second complaint are part of the same controversy as those raised in the first. It is necessary, however, to review in some detail the facts which surround this dispute.

Mr. Merritt Logan (Merritt Logan) is the sole shareholder of Logan. Logan owned a grocery store in Philadelphia, the Morris Market. Merritt Logan looked to expand, and eventually found a site in Willingboro, New Jersey. Fleming, a grocery supply company, became Logan's supplier. Merritt Logan was going to run the new store under Fleming's "Thriftway" banner, as the "Rancocas Thriftway." As well as providing financing for the Rancocas Thriftway, and becoming its main supplier, Fleming became the "go-between" for many transactions between Merritt Logan and the other corporations with which he had to do business. For example, the refrigeration system for the Thriftway store, while designed and manufactured by Hussmann Refrigeration, Inc., and installed by Engineering and Refrigeration, Inc., was purchased through Fleming.

The first count in Logan's first complaint against Fleming was for breach of contract and breach of warranty. This count alleged that the refrigeration system supplied was substantially defective and failed to function properly. Logan claimed that because of the failure of the refrigeration system, it suffered product loss of over $100,000 and "lost revenues in excess of $40,000 a week since mid-November of 1985 and will continue to suffer such losses in the future." (First Complaint, ¶ 56.) The next count claimed that Fleming breached its financing agreement by demanding repayment of $94,000 "within a week of the store opening, almost three years before repayment was due." (First Complaint, ¶ 87.) Logan then claimed that, by breaching the financing agreement, Fleming breached the implied obligation of good faith and fair dealing. (First Complaint, ¶ 92.) Additionally, Logan claimed

---

limitations are substantive for *Erie* purposes. Analogizing to the statute of limitation context, Pennsylvania has a borrowing statute, by which it would apply New Jersey statutes of limitations to New Jersey causes of action, if such statutes are more preclusive than Pennsylvania statutes. 42 Pa.Cons.Stat.Ann. § 5521. It is likely that (given the unlikely hypothetical of determining the preclusive effect of a judgment on a New Jersey cause of action which was not rendered by a New Jersey court) Pennsylvania would borrow New Jersey's stricter claim preclusion law as well. In any event, as discussed below, Pennsylvania's res judicata law appears to be the same as federal law, so I need not determine this issue.

that this obligation was breached by "withdrawing plaintiff's bill-through privileges." (First Complaint, ¶ 94.) Additionally, there were counts for "Business Coercion and Economic Distress" with respect to demanding repayment of the loan, for "Interference with Present and Prospective Business Relations" and "Defamation" for telling other suppliers to stop supplying Logan with products, and for "Contract" and "Negligence" with respect to the failure of a check-out scanning system.

The "transaction" or "related series of transactions" on which these counts are based is the series of transactions between Fleming and Logan regarding the starting up, and running, of the Rancocas Thriftway. The "entire controversy" of which these counts are merely a part involves the "bundles of rights and liabilities" which surrounded the eventual failure of that store.

 The new complaint is clearly based on the same transaction. In fact, Logan re-alleges, by incorporating by reference, the first forty-six paragraphs of the first complaint in its second complaint. (Second Complaint, ¶ 1.) These paragraphs contain most of the purely factual allegations of both complaints. The third count [11] of the second complaint is for damages for the going-concern value of the Rancocas Thriftway, based on the breach of various contractual agreements governing Fleming's obligations to Logan with respect to the Rancocas Thriftway, including the contract to provide the refrigeration system, the bill-through agreement, and the financing agreement. Count Four is for breach of fiduciary duty, with respect to Fleming's dealing with Logan regarding the Rancocas Thriftway, again specifically including the failure of the refrigeration system and the breach of the financing

agreement. Counts Five [12] and Six claim that Fleming's conduct constitutes fraud and negligent misrepresentation. Count Seven is for "Tortious Interference With Business Relations And Prospective Business Relations With Customers And Prospective Customers." Count Eight claims that Fleming was a franchisor and that its conduct violated the New Jersey Franchise Practices Act.

All of these claims arise, as did the previous claims, out of the series of transactions between Fleming and Logan regarding the Rancocas Thriftway. Logan could have raised all of these claims in the original adversary complaint. (In fact, Logan recognizes that it already *has* raised some of these claims. *See e.g.* Second Complaint, ¶ 18(b), (c). In addition Logan has sued its former attorneys for malpractice for allegedly not asserting the present claims in the original adversary proceeding. *See* pages 28–29 *infra.*) Logan was given a fair opportunity to fully litigate all claims arising out of the failure of the Rancocas Thriftway, and the breach of any agreements with Fleming which may have contributed to this failure. It is precluded by New Jersey entire controversy doctrine from raising them here.

### FEDERAL RES JUDICATA LAW

██ While I believe that New Jersey law governs this dispute, I recognize that the law is unsettled in this circuit. Consequently, if the same conclusion results with the application of federal claim preclusion, I need not rely on my choice of law analysis above.

Federal law of claim preclusion requires a defendant to demonstrate that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a

---

**11.** The first count, seeking reimbursement of attorney fees, arises out of the first litigation itself, and thus cannot be barred as part of the same controversy. Aware that the general rule is that parties pay their own attorney fees absent specific statutory authorization, *Alyeska Pipeline Serv. Co. v. Wilderness Soc.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), Logan seeks the attorney fees as an equitable remedy. Though I see no authority for such an exception

to the *Alyeska* rule, I will remand this claim to the bankruptcy court. The second count of the second complaint is based on Fleming's proof of claim, not on the failure of the Rancocas Thriftway, so it too cannot be barred as part of the same controversy.

**12.** Accidentally labelled as a second "Count IV."

subsequent suit based on the same cause of action.

*Lubrizol,* 929 F.2d at 963. There is no dispute over the first two factors. Logan and Fleming are disputing what is meant by "same cause of action."

■■■ As the Third Circuit has noted, "cause of action" is not easy to define for res judicata purposes. Instead of applying a test for "same cause of action," we must look for the " 'essential similarity of the underlying events giving rise to the various legal claims.' " *Id.,* quoting *Davis v. United States Steel Supply,* 688 F.2d 166, 171 (3d Cir.1982) (en banc), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983).[13]

Logan attempts to split res judicata into two theories. First, it argues that its complaint is not based on the same causes of action as the original complaint by comparing each count in each complaint as if each *count* is a separate *cause of action.*[14] (Memo in Opp., pp. 6–18.) Later, Logan realizes that res judicata precludes a broader range of claims than those already litigated, a doctrine it refers to as an "equitable waiver doctrine[ ]." (Memo in Opp., p. 26.) Rather than attempt to argue that the allegations in the new complaint do not fall within this bar, Logan instead argues that it should "be relieved of the equitable obligation to bring all claims in one proceeding by Bankruptcy Rule 7013 and by the bankruptcy court's exercise of its equitable powers." (Memo in Opp., p. 26.)

By attempting to split res judicata into a very narrow doctrine which only precludes counts already litigated and a broad equitable doctrine, Logan does res judicata a disservice. Res judicata is not merely collateral estoppel combined with waiver, but a doctrine unto itself. More important, Logan sidesteps the actual issue: Are the claims alleged in the second complaint part of the same cause of action raised in the first complaint?

It is established that New Jersey's entire controversy doctrine is more preclusive than the "same cause of action" view of res judicata taken in the federal courts. *Lubrizol,* 929 F.2d at 965. The exact boundary between what is barred under both doctrines and what is barred only under entire controversy has not been clearly defined. It is apparent, however, that Logan's claims fall on the former side of the line.

■■■ The Third Circuit follows the modern trend which requires a plaintiff to bring in one suit all claims for relief which it may have which arise out of the same transaction. A plaintiff does not receive a second opportunity to litigate issues which it already litigated, or had a reasonable opportunity to litigate. *Id.* at 964. It is not dispositive if there is a different theory of recovery or different relief sought. Instead, one must focus on the similarities regarding the acts complained of, the material facts, and the evidence necessary to support the claims. *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 984 (3d Cir.1984). *See also Poe v. John Deere Co.,* 695 F.2d 1103, 1105 (8th Cir.1982).

---

**13.** Even if I applied Pennsylvania law (*See supra* note 10) the result would be the same. Pennsylvania has a four part test for application of res judicata. Defendant must show an identity of (1) the thing sued on; (2) the cause of action; (3) the persons and parties to the action; and (4) the quality or capacity of the parties suing or sued. *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988); *Miller v. Indiana Hospital,* 562 F.Supp. 1259, 1273 (W.D.Pa.1983). Though the test appears different, the scope of the bar is not. Similar to federal law, Pennsylvania does not require identity between specific legal theories or claims. Instead, Pennsylvania focusses on an essential similarity of the underlying events giving rise to the various legal claims. *Gregory,* 843 F.2d at 117; *Miller,* 562 F.Supp. at

1273. Both Pennsylvania and federal courts have relied on the Restatement (Second) of Judgments, section 24, in determining the boundaries of a single cause of action. *E.g., Gregory,* 843 F.2d at 117 (3d Cir.1988) (applying Pennsylvania law); *Poe v. John Deere Co.,* 695 F.2d 1103, 1106 (8th Cir.1982) (federal); *Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 124 N.J. 398, 591 A.2d 592, 599 (1991) (federal).

**14.** Merely describing the counts plead in the first complaint does not begin to cover the vast area of claims actually litigated in the first action. *Cf.* Fed.R.Civ.P. 15(b) (treating pleadings as if amended to conform to the evidence adduced at trial).

In its motion to amend the original complaint, Logan stated the following:

> The refrigeration failures, scanning failures, and bad-faith collection and credit tactics operated collectively to drive the Rancocas Thriftway out of business. Plaintiff should be permitted to present the entire factual picture to a single jury and premise appropriate legal theories on that factual picture. It is particularly appropriate to present the three new claims against the background of the original contentions, since Fleming's collection and credit actions should be viewed alongside Fleming's unwillingness to correct defects in the refrigeration system.

(Memo in Support of Mot. to Amend Complaint, pp. 4–5.) Logan was given the chance to "present the entire factual picture to a single jury." It shall not receive another one.

The dispute between Fleming and Logan was framed, at trial, in terms of "who was responsible for the failure of the Rancocas Thriftway?" Logan claimed that Fleming's conduct was the cause of the business' failure, while Fleming blamed Merritt Logan's management of the store. The "cause of action," though separated into various claims, was for the destruction of Logan's business and all the resulting financial losses to Logan, including lost Morris Market profits. (*See* Logan's Pretrial Memo, p. 12.)

The allegations in Logan's second complaint can be grouped into three distinct categories. The first consists of the allegation of further contract breaches which, when combined with the breaches established at the first trial, support the new claims for relief. The second category involves Logan's attempts to "recognize" something new about Fleming's conduct, which it believes will support the new counts. Finally, there is the allegation of alternative grounds for relief which has already been sought.

█ As for the first category, in Count Three, Logan asserts the breaches of various contracts, including

the Sales Service Plan Agreement, an agreement to extend $240,000 in financing to the Debtor, the Financing Agreement, the Security Agreement—Fixtures, the Security Agreement—Equipment, the Trademark License Agreement, the Agency Agreement, the insurance agreement, an agreement to sell functioning refrigeration equipment to debtor of certain specifications and capacity, an agreement to install and service such equipment, an agreement of seven day payment terms for merchandise purchased by Debtor from Fleming, [and] an agreement to serve as billing agent for certain vendors supplying debtor's store.

(Second Complaint, ¶ 17.) The Restatement provides that for determining whether a given factual grouping constitutes a connected series of transactions, which establish a single cause of action, one should consider the situation pragmatically. Weight should be given "to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24(2). All of the contracts alleged by Logan are part of the same series of transactions as the refrigeration contract and the financing agreement sued on earlier. They were all related in time, space, origin, and motivation. Each contract was part of the general transaction whereby Fleming became Logan's main supplier and go-between. These additional contract claims do not provide a new cause of action. As to several of these claims, not only was evidence presented at the trial, but they were actually litigated and decided. *E.g.*, the breach of the $240,000 financing agreement.

█ Next, Logan attempts to "recognize" something new about Fleming's conduct. In Logan's memorandum of law, it briefly describes each count of the new complaint. The descriptions of Counts Four through Eight show that each count merely "recognizes" something new about Fleming's conduct. Excerpts from these descriptions include:

*Count Four*

Breach of Fiduciary Duty. This Count *recognizes* that Fleming had complete control over debtor's business and thereby had a fiduciary obligation to debtor, which it breached in numerous respects, through a course of conduct intended to benefit itself. This Count *recognizes* that Fleming's conduct was tortious and knowing and intentional.

*Count Five*

Fraud. Like the Fiduciary Duty count, this Count *recognizes* that Fleming's conduct, which drove Debtor out of business, was tortious and knowing and intentional.

*Count Six*

Negligent Misrepresentation. This Count *recognizes* the tortious nature of Fleming's misrepresentations and material omissions and applies the negligent misrepresentation standard—a lesser standard than fraud, of course—to the conduct.

*Count Seven*

Tortious Interference With Business Relations And Prospective Business Relations With Customers and Prospective Customers. This Count *recognizes* that Fleming's conduct interfered with Debtor's relationship with grocery customers and potential grocery customers—i.e. with the intended market for the Rancocas Thriftway.

*Count Eight*

Franchise Practices Act. This Count *recognizes* that Fleming placed itself in the role of a franchisor and used the power that it had as a franchisor to drive debtor out of business.[15]

(Memo in Opp., pp. 7–8, emphasis added.) With this act of "recognizing," Logan is merely basing new counts on the same conduct, perhaps with an added state of mind requirement. Yet a different theory of recovery is not sufficient to establish a new cause of action. *United States v. Athlone Indus., Inc.*, 746 F.2d at 984. Moreover, "[d]istinct causes of action do

not arise merely because the motivations alleged in the two [actions] differ." *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir.1988) (applying Pennsylvania law).

█ Lastly, Logan's new complaint seeks damages for the value of both stores as going concerns. While it is true that merely seeking a new measure of damages does not change the essential facts underlying the cause of action, Logan's claims are precluded for a more pressing reason. Logan has already had the opportunity to, and did in fact, litigate this measure of damages by way of claiming 20 years of lost future profits.

While damage to both stores as going concerns might not have been pled in the first complaint, and might not have been the subject of a special interrogatory to the jury, it certainly was litigated. For example, in Logan's Proposed Points for Charge, Logan proposed the following jury instructions:

46. Incidental or consequential damages are those damages which flow as a consequence of the breach of warranty. They may include lost profits. If you should find, from a preponderance of the evidence in the case, that damages to Merritt Logan's business or property, such as a loss of profits, were proximately caused by Fleming's breach in the sale of refrigeration system, then you should award damages for that loss....

47. In arriving at the amount of any loss of profits sustained by Merritt Logan, you can consider the parties' expectations before the transaction occurred, the experiences of like businesses, or the history of the particular business at issue. Therefore, you may consider the projections of sales prepared prior to the opening of the Rancocas Thriftway, the results of operation from the first week of operation, the results of operation at Morris Market, the report of projection ..., and the oral testimony of Mr. Logan regarding the history of profits earned by Merritt Logan, Inc.

---

**15.** Based on the evidence presented at trial and all of the pleadings in both cases, I think it is clear that the relationship between Logan and Fleming did not and cannot be shown to constitute a franchisee-franchisor relationship.

Logan clearly sought damages to both stores. *See* Logan's Pretrial Memo, pp. 10, 12. Logan clearly sought damages for lost profits for the Rancocas Thriftway for as long as it would have been viable. *See* Plaintiff's Closing Argument to the Jury [16], pp. 52–53. ("The most significant losses, however, are not the $271,000 spent on the system, they're not the $77,000 on product lost and they're not the more than a million dollars invested; they [sic] most significant and important loss was the loss of a business which should have operated with a steady stream of profits.") If Logan felt that the jury was not properly instructed, it should have raised this claim before the Third Circuit. Attempting to relitigate this issue in another action is not a proper solution.

Perhaps Logan is claiming that it should have sought not just lost profits for the store, but the value of the store as a capital asset. (Memo in Opp., p. 10, n. 8.) But Logan did not merely seek lost profits for a few weeks or months attributable to the failure of the refrigeration system and/or the calling in of the loan. Instead, it sought lost profits for up to 20 years, the full possible lifetime of the store. (Proposed Instr. 48; Plaintiff's Closing Argument, pp. 55–56.) Damages for the store as a capital asset, in addition to damages for lost profits for the store throughout its lifetime, would clearly have been duplicative. Logan, having elected one of two damage measures, cannot now bring a second claim based on the alternative measure.

This is merely a different theory of recovery. To prove these damages, Logan would have to offer [17] evidence going to the value of the Rancocas Thriftway as a going concern, its reputation in the community, and its potential profitability. All of this evidence was adduced in the original action.[18]

Perhaps the best evidence that Logan's second complaint raises the same cause of action as the first is provided by Logan itself. While attempting to explain its prior counsel's failure to bring all counts in the same complaint, Logan states

The failure to bring these [claims] must have been the result of oversight or inadvertence of prior counsel. There can be no alternative reason—no deliberate strategy—that would explain the [first] Complaint's myopic vision, its failure to encompass the full extent of Fleming's misconduct, its failure to perceive that Fleming's conduct amounted to an intentional tort committed with the knowledge that it would destroy Debtor's business, its failure to perceive the fraud and breach of fiduciary duty that would justify punitive damages, its failure to seek damages for the going-concern value of both destroyed grocery stores—a damage recovery necessary to make Debtor whole.

(Memo in Opp., p. 30). Logan is pursuing a malpractice claim against its prior counsel. Yet separating itself from prior counsel is not sufficient to separate Logan from its prior complaint. Logan fully litigated most of the claims it now seeks to assert. It cannot now proceed on claims which it all but admits are part of the same cause of action.

Under federal res judicata law, the claims alleged in the second complaint are part of the same cause of action alleged in

16. Transcript of Proceedings, December 5, 1988.

17. In addition to duplicitous evidence regarding the contracts themselves and their breach.

18. It is true that Logan did not seek damages for the Philadelphia store as a going concern in the original action. At the time of the original action, that store was still open and functioning. However, in its pretrial memorandum, plaintiff noted, that "[t]he Philadelphia store is teetering and there have been layoffs. Plaintiff's business and credit reputation have been irreparably damaged; it has lost substantial profits; and it confronts bankruptcy claims in excess of $2.25 million." (Pretrial Memo, p. 11.) Clearly, then, Logan was aware of his claim that Fleming's acts damaged the Philadelphia store, and he could have brought his claim then. Simply because the eventual damage turned out to be more than plaintiff originally anticipated does not mean that it can continue to bring lawsuits ad infinitum.

the first complaint, and are therefore barred.

## BANKRUPTCY CONSIDERATIONS

██ Logan argues that Bankruptcy Rule 7013 relieves it of its obligation to bring all of its claims in one proceeding. Bankruptcy Rule 7013 provides:

> Rule 13 F.R.Civ.P. applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim that the party has against the debtor, the debtor's property, or the estate, unless the claim arose after the entry of an order for relief. A trustee or debtor in possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading or commence a new adversary proceeding or separate action.

Federal Rule of Civil Procedure 13, in turn, governs compulsory counterclaims.[19] Logan argues that Fleming has already "realized the benefit" of Rule 7013, when it was not precluded from pursuing its proof of claim although it did not bring it as a counterclaim in the first action.

It is somewhat puzzling that Logan seeks to rely on Rule 7013. This rule governs *counter* claims. Though Logan's current complaint may be characterized as a counterclaim complaint, in response to Fleming's proof of claim, its original complaint cannot. The first complaint was filed almost a month before Fleming's proof of claim; there is no way that the original complaint could be called a counterclaim to the proof of claim not yet filed. Logan attempts to rely on the second sentence of Rule 7013, governing the situation

of "[a] trustee or debtor in possession who fails to plead a counterclaim." But Logan did not fail to plead a counterclaim, it failed to plead a claim.[20] This rule does not apply.

██ Moreover, even if the rule did apply, Logan has not met the requirements. Logan claims that the prerequisite of "oversight, inadvertence, or excusable neglect" has been met because the claims *must have been omitted by the oversight or* inadvertence of prior counsel, as there is no other reason for their omission. Mistake by counsel is a dispute between Logan and its counsel, it is not a sufficient showing of oversight, inadvertence or excusable neglect on the part of Logan. Were this not the case, the exception would swallow the rule, as every debtor who omitted a counterclaim could seek relief by blaming the omission on counsel.

Finally, I note that Logan has not yet sought leave of court to file this new adversary proceeding. Leave of court is not obtained by filing the complaint, waiting for a responsive pleading, and then raising Rule 7013 in defense.

Rule 7013 does not apply to this dispute as Logan was the plaintiff in the first adversary proceeding. Yet even if the rule did apply, Logan has fallen far short of meeting its requirements.

## EQUITABLE CONSIDERATIONS

██ Logan argues that justice requires relaxation of res judicata in this case. First, it claims that the rules should be interpreted toward the end of preserving the bankruptcy estate. Second, it claims

**19.** To the extent that it precludes litigation of a compulsory counterclaim which was not raised, Rule 13 is a Federal Rule governing res judicata. (*See supra* note 9.) However, Rule 13 only governs *counterclaims,* it does not have any provision governing all claims a *plaintiff* must bring.

**20.** The difference is not merely one of semantics. A defendant is forced into a lawsuit at the time of the plaintiff's choosing. Federal Rule of Civil Procedure 13 forces that defendant to

bring all mandatory counterclaims or lose them. Bankruptcy Rule 7013 softens the impact of that rule. A debtor in possession who fails to plead a counterclaim is in a very tenuous financial position and is now being sued. Rule 7013 allows him to mistakenly omit a counterclaim when he is defending that suit. In contrast, a debtor-plaintiff, like Logan, chooses the time of his lawsuit, and is required by the common law of res judicata to bring all of his claims at once.

that the claims will be litigated in the malpractice suit anyway, and that it is better to litigate them against Fleming.

Perhaps I may have equitable discretion to suspend the operation of the law of res judicata and permit these claims to proceed. Because I am of the opinion that New Jersey res judicata law, which has been codified, governs this dispute, I very much doubt that my equitable powers extend that far. Nonetheless, even if I had such discretion, I would decline to exercise it in this case. Logan fully litigated, through trial and appeal, most of the claims it now attempts to reassert. It raised theories of millions of dollars of damage. It received a judgment (which has been paid in full) of over 1.5 million dollars. Forcing Fleming to relitigate the same cause of action, based on the same essential facts, would be a waste of legal and judicial resources, and totally unfair and inequitable to Fleming.

Since the malpractice claim against prior counsel is pending, Logan believes equitable considerations weigh in favor of allowing this action to proceed. In order to succeed in its malpractice action, Logan will have to prove that it would have prevailed on these claims. Logan believes it would be better to try these claims against Fleming, rather than hypothetically against its prior counsel. Moreover, if Logan prevails, it would be better if Fleming, the actual wrongdoer, paid the damages rather than Logan's prior counsel.

Litigation, like all good things, must come to an end. Res judicata protects defendants, like Fleming, from being repeatedly sued on the same facts and causes of action under different nomenclature, claims and/or theories, and for different measures of damages. Fleming fully litigated the claims once. Equity demands that Fleming now be released from the

trial of this dispute. If Logan believes it could have received more from Fleming but for the malpractice of its counsel, it should raise the dispute with its counsel, as it has. But Fleming itself should not be forced to accrue the costs of relitigation, simply because Logan believes its own counsel did not pursue all avenues of recovery. *If* Logan is correct in that its counsel did commit malpractice, then the counsel is the real wrongdoer. If counsel erred in not bringing all claims at once, the counsel, not Fleming, should be held liable.[21]

### CONCLUSION

Counts Three through Eight of the Complaint will be dismissed on grounds of res judicata. Counts One and Two, for attorney fees and for restitution for the costs of identifying overcharges and set-offs in Fleming's proof of claim, will be remanded to the bankruptcy court.

### MOTION TO JOIN AS A PARTY PLAINTIFF

Mr. Merritt Logan has also filed a pro se motion to join this action as a party plaintiff. As the bulk of this action will be dismissed, and the remainder will be remanded to the bankruptcy court, there is no longer a proceeding in this court for Merritt Logan to join. Consequently, his motion will be denied.

---

**21.** I am by no means suggesting that Logan's prior counsel was in any way deficient. From my clear personal recollection of the trial, my personal impression was that Logan's counsel most vigorously asserted every reasonably probable claim and theory of recovery, sought the fullest possible amount of damages, and was extremely successful in the ultimate outcome of the case.