Charles F. KELLY, Plaintiff,

v.

**BOROUGH OF SAYREVILLE,**
**et al., Defendants.**

Civil Action No. 94–5460.

United States District Court,
D. New Jersey.

May 10, 1996.

Richard J. Kaplow, Westfield, NJ, for Plaintiff.

Jerrold J. Wohlgemuth, Apruzzese, McDermott, Mastro & Murphy, Liberty Corner, NJ, for Defendants.

## OPINION

WOLIN, District Judge.

■ This case requires the Court as a matter of first impression to determine whether the entire controversy doctrine applies to actions initiated before an administrative agency where the agency is unable to award compensatory and punitive damages to the claimant.[1] Subsumed within this issue is New Jersey's policy that a plaintiff select the forum with the widest possible relief or lose the right to obtain specific relief in a separate judicial proceeding before a court of competent jurisdiction, either state or federal.

Before the Court is defendants' motion to dismiss plaintiff's complaint for failure to comply with New Jersey's entire controversy doctrine and for failure to state a cause of action. The Court has decided this motion on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant defendants' motion to dismiss.

## BACKGROUND

In November 1992, the Borough of Sayreville ("Borough") and the Chief of the Sayreville Police Department, Douglas A. Sprague ("Sprague"), (collectively the "defendants") commenced a departmental disciplinary proceeding to remove plaintiff Charles F. Kelly ("Kelly") from the Sayreville Police Depart-

---

1. Although the New Jersey Supreme Court has not yet ruled on the application of the entire controversy doctrine as it applies to actions initiated before an administrative agency and subsequently then brought before a court of law, in the absence of such a ruling it is the task of a federal court to predict how that court would rule. *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 376 (3d Cir.1987) (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981)).

ment. In response, Kelly and the Sayreville Policeman's Benevolent Association ("PBA") brought an Order to Show Cause with Temporary Restraints before the Public Employment Relations Commission ("PERC") to enjoin the Borough from proceeding with the disciplinary hearing against Kelly. (Pl.'s Ex. B.)

Contemporaneous with the filing of the order to show cause, Kelly and the PBA elected to file an unfair labor practice charge with PERC[2] wherein Kelly alleged that he was subjected to disciplinary actions in retaliation for his union activities as PBA president. Kelly contended that the defendants' proposed disciplinary proceeding violated the New Jersey Employer–Employee Relations Act, N.J.S.A. 34:13A–1, *et seq.* (the "Act") and his First Amendment right of free speech. (Def.'s Ex. A.) Defendants agreed to postpone the disciplinary hearing pending the disposition of the unfair labor practice charge.

In May 1995, PERC issued its opinion that the Borough had violated the Act. PERC then ordered that the pending disciplinary proceeding against Kelly be withdrawn, that defendants cease and desist from interfering with or discriminating against the PBA or Kelly, and that Kelly's record be expunged of any related discipline. With respect to Kelly's First Amendment claim, PERC merely noted that the hearing examiner had declined to address it. Neither the PBA nor Kelly sought appellate review of PERC's decision and order which dismissed certain of their claims and declined to address Kelly's First Amendment claim.

While the unfair labor practice charge was still pending with PERC, Kelly filed the instant action pursuant to 42 U.S.C. § 1983 ("section 1983") alleging that defendants' conduct violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. In this action Kelly is seeking compensatory damages for pain and suffering, punitive damages, and attorneys' fees. Such remedies were not available to him under the Act.

■ Defendants move to dismiss this action because Kelly voluntarily and knowingly elected to litigate his First Amendment claim and his claims under the Act before PERC, which he was *not required to do*.[3] Subsequently, he named Sprague as a party defendant and brought his Fifth, Sixth, Eighth, and Fourteenth Amendment claims in this Court to obtain additional remedies. It is this fragmented presentation of claims that defendants contend violates the entire controversy doctrine. Defendants alternatively contend that the Court should dismiss Kelly's section 1983 claims for failing to state a claim.

## DISCUSSION

### A. New Jersey's Entire Controversy Doctrine

■ New Jersey's entire controversy doctrine is a strict application of the rule against splitting a cause of action, "reaching more broadly than the same cause of action requirement of the traditional res judicata doctrine."[4] *Electro–Miniatures Corp. v.*

---

2. The charge was later amended to delete Kelly as an individual charging party.

3. It is well settled that there is no exhaustion requirement with respect to claims arising under section 1983. Accordingly, a party who wishes to assert federally protected rights, need not proceed in the administrative forum. *See Bowman v. Pennsauken,* 709 F.Supp. 1329, 1335–36 (D.N.J.1989) (citation omitted).

4. The difference in scope between the doctrines is explained by the difference in their respective objectives. *Mori v. Hartz Mountain Development Corp.,* 193 N.J.Super. 47, 55–56, 472 A.2d 150 (App.Div.1983) (citations omitted).

The primary objective of the doctrine of res judicata is to ensure judicial finality. *Culver v.*

*Insurance Co. of N. America,* 115 N.J. 451, 460, 559 A.2d 400 (1989) (citation omitted). Accordingly, the doctrine of res judicata "attaches when there has been: (1) a final judgment on the merits in a prior suit [by a court or tribunal of competent jurisdiction] involving (2) the same parties or their privies and (3) the subsequent suit is based on the same causes of action." *Arab African Intern. Bank v. Epstein,* 10 F.3d 168, 171 (3d Cir.1993).

By contrast, the principal objectives of the entire controversy doctrine are "(i) to encourage the comprehensive and conclusive determination of a legal controversy; (ii) to achieve party fairness, including both parties before the court as well as prospective parties; and (iii) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation."

*Wendon Co., Inc.,* 889 F.2d 41, 44 (3d Cir. 1989) (citation and quotation marks omitted); *Bennun v. Rutgers State University,* 941 F.2d 154, 163 (3d Cir.1991), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992). The doctrine holds that "the adjudication of a legal controversy should occur in one litigation in only one court" and that "all parties involved in the litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Kozyra v. Allen,* 973 F.2d 1110, 1111 (3d Cir.1992) (citation omitted). The entire controversy doctrine also:

> encompasses the mandatory joinder of parties. [T]o the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy.

*Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 26, 560 A.2d 1169, 1178 (1989).

 The doctrine now is codified in New Jersey Court Rule 4:30A, which provides that "[n]on-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." Rule 4:30A. Therefore, a party who holds back from litigation any claim which could have been asserted will be precluded from attempting to assert such claim in a subsequent proceeding.

 In applying this doctrine, the New Jersey courts make an evaluation of each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day. If those conse-

quences are likely to mean that the litigants in the action as framed will, after final judgment therein is entered, be likely to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not the component constitutes either an independent cause of action by technical definition or an independent claim which, in the abstract, is separately adjudicable.

*Electro–Miniatures Corp.,* 889 F.2d at 45 (quoting *Wm. Blanchard Co. v. Beach Concrete Co., Inc.,* 150 N.J.Super. 277, 293–94, 375 A.2d 675 (App.Div.), *certif. denied,* 75 N.J. 528, 384 A.2d 507 (1977)).

 The boundaries of the doctrine are not limitless, however. "The doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." *Mystic Isle Development Corp.,* 142 N.J. at 323, 662 A.2d 523 (citations omitted). The doctrine is not applied when "joinder would result in significant unfairness to the litigants or jeopardy to a clear presentation of the issues and a just result." *Id.* at 322, 662 A.2d 523 (citations omitted); *accord Cafferata v. Peyser,* 251 N.J.Super. 256, 597 A.2d 1101 (App.Div.1991) ("The [entire controversy doctrine] is equitable in nature and is fundamentally predicated upon judicial fairness and will be invoked in that spirit."). And the doctrine is not applied where "the first proceeding occurred before a lesser tribunal." *Petrocelli v. Woodhead Co.,* 993 F.2d 27, 29 (3d Cir.1993) (citations and quotation marks omitted).

---

*Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 N.J. 310, 322, 662 A.2d 523 (1995) (citations omitted); *Kozyra v. Allen,* 973 F.2d 1110, 1111 (3d Cir.1992) (The entire controversy doctrine seeks to avoid delay, waste and expense of fragmented litigation); *Mortgageling Corporation v. Commonwealth Land Title Ins. Co.,* 142 N.J. 336, 345, 662 A.2d 536 (1995) ("Fragmented and multiple litigation takes its toll on not only the parties but the judicial institution and the

public.") (citing omitted); *Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 18, 560 A.2d 1169 (1989) (mandatory party joinder protects all of society from repetitious, abortive, and wasteful litigation).

Thus, the entire controversy doctrine applies "to all aspects of a controversy that *might* have been litigated and determined." *Mori,* 193 N.J.Super at 56, 472 A.2d 150 (emphasis in original); *see also infra.*

In applying the entire controversy doctrine to this case, the Court must resolve: (i) whether Kelly could have raised his federal claims before PERC and (ii) whether raising such claims before PERC would have constituted a full and fair opportunity to litigate such claims. *See Cafferata,* 251 N.J.Super. at 261, 597 A.2d 1101 (as a matter of first principle the entire controversy doctrine requires that the "party whose claim is sought to be barred must have had a fair opportunity to have litigated that claim in the first action").

 With respect to the first question, the Court finds that Kelly could have raised his federal claims before PERC, but he simply chose not to. Indeed, notwithstanding Kelly's contention that he was unable to bring his section 1983 claims before PERC, Kelly has not cited, nor has this Court's research uncovered, any case in which a plaintiff was barred from bringing his federal claims before PERC. *Cf. Hunterdon Cent. High Sch. Bd. of Ed. v. Hunterdon Cent. High Sch. Teachers' Ass'n,* 174 N.J.Super. 468, 416 A.2d 980 (App.Div.1980) (acknowledging that "administrative agencies are competent to pass upon constitutional issues germane to proceedings before them"), *aff'd* 86 N.J. 43, 429 A.2d 354 (1981); *Abbott v. Burke,* 100 N.J. 269, 297, 495 A.2d 376 (1985) (finding that the presence of constitutional issues and claims for ultimate constitutional relief does not, in all circumstances, preclude resort in the first instance to administrative adjudication). Kelly's contention, moreover, ignores the fact that he included his First Amendment claim in his charge before PERC.

 As to the second question, the Court finds that Kelly's opportunity to raise his claims before PERC constituted a full and fair opportunity to litigate such claims. A party has been denied a full and fair opportunity to litigate only when state procedures fall below the minimum requirements of due process as defined by federal law. *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982). While Kelly does allege a due process violation, Kelly fails to provide any specificity regarding this claim. *See infra.* Rather, Kelly merely asserts that the "narrow scope" of PERC's proceeding and the inability to litigate damage claims before PERC renders the entire controversy doctrine inapplicable to the present case. (Pls. Opp'n Br. at 7.) The Court disagrees.

 First, Kelly elected the forum. Although Kelly now complains that he hoped for remedies outside PERC's statutory grant, he could have initiated all of his claims, including his claims under the Act and his First Amendment claim, in state court or in this Court. Kelly instead chose to split his claims between PERC and this Court.[5]

Second, the proceedings before PERC were judicial in nature and were fairly conducted. Moreover, to the extent that Kelly was unsatisfied with PERC's findings and order, he had the opportunity to file an appeal to the Superior Court, Appellate Division. No appeal was filed. Thus, the Court may infer that Kelly was provided with an adequate opportunity to litigate his claims and was not dissatisfied with the final result.

Accordingly, because Kelly had a fair opportunity to have litigated his claims before PERC, the Court finds that the entire controversy doctrine applies to the case at hand.[6] *Cf. City of Hackensack v. Winner,* 82

---

**5.** Kelly's fragmentation of his claims also contravenes New Jersey's policy that a plaintiff "select the forum with the widest possible relief" or lose the right to obtain relief in a separate action. *Nanavati v. Burdette Tomlin Memorial Hosp.,* 857 F.2d 96, 113 (3d Cir.1988) (citing *Giudice v. Drew Chemical Corp.,* 210 N.J.Super. 32, 41–42, 509 A.2d 200 (App.Div.), *certif. granted and remanded on other grounds, certif. denied,* 104 N.J. 465, 517 A.2d 449 (1986)), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 109 S.Ct. 1528, 103 L.Ed.2d 834 (1989); *accord Pittman v. LaFontaine,* 756 F.Supp. 834, 842–43 (D.N.J.1991);

*Christian Bros. Institute v. Northern New Jersey Interscholastic League,* 86 N.J. 409, 415–16, 432 A.2d 26 (1981).

**6.** The Court observes that Kelly's previous opportunities to litigate his claims are distinguished from those cases where the New Jersey courts have held that the entire controversy doctrine is inapplicable because the first proceeding occurred before a lesser tribunal. In *Cafferata,* for example, an association of physicians sued the plaintiff in New Jersey's Special Civil Part to

N.J. 1, 29, 410 A.2d 1146 (1980) (applying the entire controversy doctrine to sister agencies with parallel jurisdiction); *Bressman v. Gash*, 131 N.J. 517, 526–27, 621 A.2d 476 (1993) (under New Jersey law, adjudicative decisions of administrative agencies are accorded the same degree of finality as are judgments obtained in courts); *Sheeran v. Progressive Life Ins. Co.*, 182 N.J.Super. 237, 251, 440 A.2d 469 (App.Div.1981) (same); *Kremer*, 456 U.S. at 484 n. 26, 102 S.Ct. at 1899 n. 26 (under federal law where the parties are afforded an adequate opportunity to litigate their claims res judicata is properly applied to decisions of an administrative agency acting in a "judicial capacity"); *United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) (same).

■ Kelly's fragmentation of his claims is just the sort of conduct that the entire controversy doctrine seeks to forestall. The complaint before this Court rises out of the same conduct and alleged wrongdoing raised before PERC, the same parties are involved,

and the same evidence is relevant. All that being so, once Kelly chose to litigate his claims before PERC, he was bound to raise all of his claims and was bound by the remedies within PERC's statutory grant. *Cf. Pittman*, 756 F.Supp. at 842–43 (D.N.J.1991); *Christian Bros. Institute*, 86 N.J. at 415–416, 432 A.2d 26. That Kelly chose a forum that provided a restrictive mode of relief does not allow him to initiate another suit in another forum to obtain the additional relief which he now desires. *Petrocelli*, 993 F.2d at 30 n. 3 (it is the opportunity to litigate in a prior proceeding that triggers the application of the entire controversy doctrine).

■ To allow Kelly to deliberately bypass New Jersey's entire controversy rule would undermine the policy considerations at the center of the doctrine. The piecemeal nature of this litigation places a burden on scarce judicial resources, gives the litigants incentives to withhold claims, presents disincentives to bring all claims against all parties in one proceeding and limits the capacity of the courts to resolve other claims.[7]

collect a small unpaid bill. 251 N.J.Super. at 257, 597 A.2d 1101. Plaintiff's health insurer paid the bulk of the bill, and plaintiff appearing *pro se*, settled the action by paying the physician an additional $160. *Id.* at 258–59, 597 A.2d 1101. In the meantime, plaintiff was advised that two of the doctors who sued him for their fee may have been guilty of malpractice. *Id.* at 259, 597 A.2d 1101. Plaintiff subsequently instituted a malpractice action in the Law Division. *Id.* The New Jersey Appellate Division found that the minor nature of the collection action, plaintiff's appearance *pro se*, and the absence of any juridical involvement in the settlement action all militated against barring a potentially significant personal injury claim. *Id.* 261–62, 597 A.2d 1101. In so finding, the *Cafferata* court expressed concern with the inequality of the forums, *viz.*, that the informal expedited mediation type of proceeding that was appropriate for small claims, was not appropriate for significant tort litigation. *Id.* at 262, 597 A.2d at 1101. Accordingly, the *Cafferata* Court reasoned that the plaintiff did not have a fair and reasonable opportunity to fully litigate his claims in the initial proceeding. *Id.*

Similarly, in *Thornton v. Potamkin Chevrolet*, the court held that a discharged employee who failed to raise a claim of discrimination in a grievance arbitration could pursue the claim before the state division on Civil Rights. 94 N.J. 1, 9, 462 A.2d 133 (1983). The court explained that the entire controversy doctrine was not applicable "because there is no comparability between

private contractual arbitration and court or administrative adjudications. The doctrine assumes forums of equal jurisdiction." *Id.* at 5, 462 A.2d 133.

In the case at hand, the state administrative adjudication, as the initial forum, was capable of judging any claims that Kelly may have had as a result of defendants' conduct. In addition, Kelly had the added opportunity of seeking appellate review which he chose to forego.

7. The Court notes in passing that, Kelly has misapprehended the breadth of New Jersey's entire controversy doctrine. "[J]oinder is not a matter of party autonomy. It is for the trial court to determine whether or not joinder is appropriate in a given case, and thus litigants should be compelled to bring all actions at one time." *Mystic Isle Development Corp.*, 142 N.J. at 324, 662 A.2d 523 (citations omitted). "A plaintiff who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring that claim later." *Id.; accord Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 299, 662 A.2d 509, 518 (1995) (citations omitted) ("The trial court must be given the opportunity to structure the litigation in the most efficient and most equitable manner available. Fragmented litigation and piecemeal adjudication are not party prerogatives.").

Kelly should have allowed the state adjudicatory system the opportunity to manage the full controversy. PERC and New Jersey's courts

Thus, the validity of the constitutional claims and the consequent demand for compensatory and punitive damages could have been embodied in one action before a single forum. The breadth of this Court's jurisdiction was sufficient to entertain the unfair labor practice, as well as the asserted constitutional claims.[8] Moreover, by the exercise of the Court's equitable powers, a restraint similar to the restraint imposed by PERC could have been imposed by this Court.

By the selection of PERC as his chosen forum to assert his claims, Kelly did not select the forum with the widest possible relief and is bound by that choice. Accordingly, his relief is limited to that granted by PERC. Any additional relief originally available to him through a different forum is precluded by the entire controversy doctrine.

Similarly, the entire controversy doctrine bars Kelly's claims against Sprague. When a party deliberately chooses to defer litigation by suing certain parties in one proceeding and withholding claims against other parties, a New Jersey court need not later entertain the claims against the omitted parties if jurisdiction was available in the first forum. *See Mortgagelinq Corporation,* 142 N.J. at 338, 662 A.2d 536. Sprague was named for the first time as a party defendant in this proceeding, although he had a material interest in the first proceeding. Because Kelly elected not to include Sprague as a party defendant before PERC, he is now barred from naming Sprague as a defendant in this subsequent action.[9]

could have then, if necessary, in the interest of justice bifurcated Kelly's claims. That is, in effect, what PERC did by not resolving Kelly's First Amendment claim.

8. To the extent that PERC might have had primary jurisdiction as to the unfair labor practice complained of here, *cf. Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.,* 78 N.J. 144, 393 A.2d 278 (1978), the proper procedure for Kelly was to inform the state forum of all of his claims and that he intended to reserve his civil rights claims for adjudication in federal court pursuant to *England v. Louisiana Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). "Under *England* a party who has been forced to litigate in state court may reserve its federal claims for federal adjudication by inform-

## B. Failure to State A Claim

On a motion to dismiss for failure to state a claim, the Court must accept as true all allegations in the complaint, and provide the non-moving party with the benefit of all inferences which fairly may be drawn therefrom. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). A complaint cannot be dismissed unless the court is certain that no set of facts can be proved that would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In determining whether a complaint should be dismissed for failure to state a claim, the court must limit its consideration to the facts alleged in the complaint. *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3rd Cir.1978).

The Court need not tarry long in dismissing Kelly's section 1983 claims for failure to state a cause of action. To sustain a claim under section 1983, Kelly must plead sufficient facts to establish the deprivation of a federal right secured by the United States Constitution or by federal statute and that the deprivation of that right was under color of state law. *West v. Atkins,* 487 U.S. 42, 48–49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). If Kelly has suffered no deprivation of a federal right, he may not invoke section 1983.

Against this backdrop, the Court observes that Kelly has not alleged facts consistent with his burden that he was deprived of any federal right. To begin, Kelly

ing the state court of its reservation of those claims." *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1071 (3d Cir.1990). Here, Kelly did not inform the state court that he intended to pursue his federal claims in federal court; indeed, Kelly failed to even notify PERC as to the existence of such federal claims.

9. The Court notes, moreover, that Kelly has offered no opposition to that part of defendants' motion seeking dismissal of the constitutional claims asserted against defendant Sprague individually. Because the motion in that respect is unopposed, and because the entire controversy doctrine bars such claims as could have been asserted against all parties to the controversy, the claims against defendant Sprague will be dismissed.

bases his section 1983 claim on violations of various constitutional provisions—the Fifth, Sixth, Eighth and Fourteenth Amendments. However, the Fifth Amendment only provides protection from the federal government. *See Bowman,* 709 F.Supp. at 1345 n. 23. Yet, Kelly has not alleged any facts indicating any conduct on the part of the federal government. The Sixth Amendment provides protection to criminal defendants. Yet Kelly is not a criminal defendant. The Eighth Amendment provides protection from excessive bail, fines and cruel and unusual punishment. Yet Kelly has not been subjected to any of these penalties. The Fourteenth Amendment provides protection to constitutional liberty and property interests. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Yet Kelly has not been deprived of any liberty or property interest; Kelly did not lose his job or any compensation. The Fourteenth Amendment also provides equal protection under the laws. Kelly, however, has not alleged any facts indicating that he was denied such equal protection. Hence, based upon the facts presented no actionable claim grounded in the Fifth, Sixth, Eighth or Fourteenth Amendments is presented.

Kelly, moreover, has not responded to defendants' motion to dismiss for failure to state a claim. Accordingly, this part of defendants motion is unopposed.

Because Kelly does not allege facts in his complaint supporting any deprivation of his federal rights under either the Fifth, Sixth, Eighth or Fourteenth Amendments, the Court will dismiss Kelly's complaint in its entirety.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Kelly's complaint for failure to comply with New Jersey's entire controversy doctrine and for failure to state a cause of action will be granted in its entirety.