The PITTSTON COMPANY, Plaintiff,

v.

SEDGWICK JAMES OF NEW
YORK, INC., Defendant.

Civil Action No. 96–1578.

United States District Court,
D.   New Jersey.

July 22, 1997.

Dennis J. Drasco, Kevin J. O'Connor, Lum, Danzis, Drasco, Positan & Kleinberg, Roseland, NJ, for Plaintiff.

Stuart J. Freedman, Charles W. Miller, III, Norris, Mclaughlin & Marcus, Somerville, NJ, James S. Dittmar, James L. Messenger, Hutchins, Wheeler & Dittmar, Boston, MA, for Defendant.

## OPINION

WOLIN, District Judge.

Plaintiff The Pittston Company ("Pittston") has moved for reconsideration of this Court's October 18, 1996 Opinion and Order granting summary judgment in favor of defendant Sedgwick James of New York, Inc. ("Sedgwick"). *See The Pittston Co. v. Sedgwick James of New York, Inc.,* No. 96–1578, 1996 WL 617139 (D.N.J.1996) (the "Summary Judgment Opinion"). The Court has decided this motion without oral argument. For the reasons expressed below, the Court will (1) grant Pittston's Motion for Reconsideration; (2) vacate Parts 2C and 2D of the Discussion section of the Summary Judgment Opinion; (3) vacate summary judgment in favor of Sedgwick on entire controversy grounds; and (4) affirm summary judgment in favor of Sedgwick on statute of limitations grounds, an issue initially raised in Sedgwick's Motion for Summary Judgment which the Court never reached in the Summary Judgment Opinion.

## BACKGROUND

On April 3, 1996, Pittston instituted this action against Sedgwick by filing a complaint in this Court. The crux of the complaint is that Sedgwick, an insurance broker,

negligently failed to obtain proper environmental liability insurance on behalf of Pittston. On August 1, 1996, Sedgwick filed a Motion for Summary Judgment seeking to dismiss Pittston's complaint on the grounds that (1) the complaint is barred by New Jersey's entire controversy doctrine;[1] and (2) Pittston's claims are time barred.

On October 18, 1996, this Court entered an Opinion and Order granting summary judgment in favor of Sedgwick based upon the entire controversy doctrine. *See generally* Summary Judgment Opinion. Specifically, the Court held that the entire controversy doctrine could be applied to bar a second filed action even where final judgment has not been entered in the first filed action. *See id.* *9. Because the Court granted summary judgment based on the entire controversy doctrine, the Court did not address the issue of whether Pittston's claims were barred by the applicable statute of limitations. *See id.* * 11 n. 12.

On November 1, 1996, Pittston filed the present Motion for Reconsideration of the Court's summary judgment Order. In its motion, Pittston argues that (1) the Court misapplied the entire controversy doctrine and (2) this Court, sitting in diversity, should not apply a state law procedural doctrine. Naturally, Sedgwick opposes Pittston's motion for reconsideration and filed written submissions to that effect on November 12, 1996.

While Pittston's motion for reconsideration was pending, the United States Court of Appeals for the Third Circuit released *Rycoline Products, Inc. v. C & W Unlimited,* 109 F.3d 883 (3d Cir.1997), an opinion that addressed the issue of final judgment under the entire controversy doctrine. The plaintiff in *Rycoline* had initiated an action in state court and, subsequently, while the state court action was still pending, brought a second

action against the same defendants in federal court. The district court dismissed the federal action on entire controversy doctrine grounds. In so doing, the district court relied heavily on the discussions of the entire controversy doctrine in *Kelly v. Borough of Sayreville,* 927 F.Supp. 797 (D.N.J.1996), *aff'd,* 107 F.3d 1073 (3d Cir.1997)[2] and *Mortgagelinq Corp. v. Commonwealth Land Title Insurance Co.,* 142 N.J. 336, 662 A.2d 536 (1995).

On appeal, the Third Circuit reversed the district court decision. In reversing *Rycoline,* the Third Circuit examined whether the entire controversy doctrine could be applied to bar a second action filed while the first action was still pending. After a thorough discussion of the issue, the Third Circuit held that "the entire controversy doctrine does not preclude the initiation of a second action before the first action has been concluded." *Rycoline,* 109 F.3d at 890. In reaching that holding, the Third Circuit disregarded *Kelly* and found *Mortgagelinq* not to be dispositive of the issue. *See id.* at 888–89. Instead, the Third Circuit relied on *Kaselaan & D'Angelo Associates, Inc. v. Soffian,* 290 N.J.Super. 293, 675 A.2d 705 (App.Div.1996), the only New Jersey case that the Third Circuit found to "squarely address[ ] and answer[ ]" the question of whether the entire controversy doctrine can be applied before the first action is concluded. *See Rycoline,* 109 F.3d at 887 (quoting the holding in *Kaselaan,* 290 N.J.Super. at 299, 675 A.2d at 708: "[The entire controversy doctrine] does not require dismissal when multiple actions involving the same or related claims are pending simultaneously.").

Notably, at the end of its discussion, the Third stated:

---

1. The entire controversy doctrine requires a party to bring in one action "all affirmative claims that [it] might have against another party" and to join in that action "all parties with a material interest in the controversy," or be forever barred from bringing a subsequent action involving the same underlying facts. *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 289, 662 A.2d 509, 513 (1995).

2. Although *Kelly* was affirmed, that decision was not affirmed on entire controversy doctrine grounds. Indeed, the Third Circuit expressed "significant reservations concerning the district court's disposition of [the entire controversy doctrine] issue." *Kelly,* 107 F.3d at 1075. Moreover, this Court's reliance on the entire controversy doctrine to grant summary judgment in *Kelly* was criticized in a concurring opinion. *See Kelly,* 107 F.3d at 1078–79 (McKee, J., concurring).

In so holding, we necessarily express our disapproval of *Pittston Co. v. Sedgwick James of New York* ..., the only other opinion we have uncovered that addresses the issue we decide today. There, the court held that "the absence of final judgment in the [first] filed action does not preclude application of the entire controversy doctrine" to bar the second action. Although *Pittston* was decided five months after *Kaselaan*, it fails to cite that opinion. Moreover, the district court in *Pittston* relied upon the same inferences from *Mortgagelinq* that we have found to be unsound. Thus, *Pittston* suffers from the same infirmities as the opinion of the district court in the instant case and should not be followed.

*Id.* at 889–90.

After the Third Circuit released its decision in *Rycoline*, Pittston wrote to this Court and requested that its motion for reconsideration be granted immediately. Sedgwick, in turn, requested the opportunity to supplement its opposition to Pittston's Motion for Reconsideration so as to argue why *Rycoline* does not mandate granting Pittston's motion. The Court granted Sedgwick's request, and both parties thereafter submitted briefs addressing the issues presented by *Rycoline* and the impact of that opinion on the present Motion for Reconsideration.

## DISCUSSION

### I. Standard for Reconsideration

■ Local Civil Rule 7.1(g) of the United States District Court, District of New Jersey, contains the standard to be applied to motions for reconsideration;[3] Rule 7.1(g) requires that the moving party "set forth concisely the matters or controlling decisions which counsel believes the [Court] has overlooked." The Rule "does not contemplate a Court looking to matters which were not originally presented." *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 162 (D.N.J.1988). Thus, a party "must show more than a disagreement with the

court's decision." *Panna v. Firstrust Sav. Bank*, 760 F.Supp. 432, 435 (D.N.J.1991). A mere "recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Carteret Sav. Bank. F.A. v. Shushan*, 721 F.Supp. 705, 709 (D.N.J.1989).

In its initial brief in support of the Motion for Reconsideration, Pittston argues two reasons why the Summary Judgment Opinion should be reconsidered and vacated: (1) the Court misapplied and inappropriately expanded the entire controversy doctrine by holding that the doctrine is applicable in cases where final judgment has not been entered in the first filed action; and (2) the Court, sitting in diversity, should not apply a state law procedural doctrine. *See generally* Pl.'s Br. in Support of Motion for Reconsideration ("Pl.'s Reconsideration Br.").

■ The Court need not address the latter argument because Pittston did not raise it in opposition to Sedgwick's Motion for Summary Judgment. Indeed, Pittston candidly acknowledges that, with respect to its second argument, Pittston fails to produce an issue that the Court "overlooked" in deciding the Motion for Summary Judgment: "Although this issue was not specifically briefed by Pittston in its opposition to the Motion for Summary Judgment, it is respectfully submitted that same is an important issue which addresses an inherent limitation on this Court's authority in a diversity action. As such this issue should be addressed on reconsideration." *Id.* at 9 n. 1. Despite Pittston's invitation, the Court declines to consider Pittston's second issue—whether the Court, sitting in diversity, should apply a state law procedural doctrine. As this Court stated in *Florham Park*, Rule 7.1(g) "does not contemplate a Court looking to matters which were not originally presented but which have since been provided for consideration." 680 F.Supp. at 162. The Court therefore concludes that Pittston's second argument does not support reconsideration of the Summary Judgment Opinion.

---

**3.** Effective April 1, 1997, General Rule 12 I, which previously governed motions for reargument, was renumbered Rule 7.1(g). The language of General Rule 12 I was not altered in Rule 7.1(g).

■ As to Pittston's first argument, however, the *Rycoline* decision warrants granting Pittston's Motion for Reconsideration. Where, during the pendency of a motion for reconsideration, the Third Circuit Court of Appeals, or other court of binding authority, issues a decision that reasonably can be said to control the issue underlying the motion for reconsideration, a district court has a responsibility to review its own opinion in light of the Third Circuit decision; this review not only advances the policy of judicial economy, but is mandated by our judicial hierarchy. Upon reconsideration, the Court may determine the extent to which the newly-issued decision controls the issue and whether the court's prior ruling should be affirmed, vacated or modified.

Here, *Rycoline* can reasonably be said to control the issue imbedded in Pittston's Motion for Reconsideration—whether the entire controversy doctrine may be applied prior to the entry of final judgment in the first filed action. Moreover, the *Rycoline* court's reliance on *Kaselaan*, an instructive, if not dispositive, state court opinion which this Court failed to discuss in the Summary Judgment Opinion and which Pittston argues this Court overlooked, *see* Pl.'s Motion for Reconsideration Reply Br. ("Reply Br.") at 5, supports granting Pittston's Motion for Reconsideration. *See Florham Park,* 680 F.Supp. at 162. As such, the Court will grant Pittston's Motion for Reconsideration and will reconsider the Summary Judgment Opinion in light of Pittston's first argument, as illuminated by *Rycoline.* The Court, thus, revisits whether the entire controversy doctrine may be applied to bar a second filed action before final judgment is entered in the first filed action.

## II. Pittston's Motion for Reconsideration

■ As indicated above, Pittston initially moved for reconsideration without the bene-

fit of *Rycoline.* In its pre*Rycoline* brief, Pittston argues that the Court improperly expanded the entire controversy doctrine in three respects.[4] *See* Pl.'s Reconsideration Br. at 3–8. In light of *Rycoline,* however, the Court is disinclined to discuss the three arguments. Instead, the Court will focus on the parties' supplemental briefs, which address why this Court should or should not follow *Rycoline.*

■ At the outset, it is important to acknowledge that this Court is bound by controlling decisions of the Third Circuit. "It is, of course, patent that a district court does not have the discretion to disregard controlling precedent simply because it disagrees with the reasoning behind such precedent." *Vujosevic v. Rafferty,* 844 F.2d 1023, 1030 n. 4 (3d Cir.1988). A district court owes "blind fealty" to the precedent of a circuit court. *See Finch v. Hercules, Inc.,* 865 F.Supp. 1104, 1120 (D.Del.1994); *accord Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 867 (3d Cir.1984). Thus, if this Court finds *Rycoline* to control the question at issue here, this Court has no alternative but to follow the precedential announcement of the Third Circuit.

Sedgwick asserts two reasons why *Rycoline* does not require this Court to vacate its prior application of the entire controversy doctrine.

### A. Sedgwick's First Argument as to Why *Rycoline* Does Not Require Vacating the Summary Judgment Opinion

First, Sedgwick avers that *Rycoline* is not controlling because it is contradicted by existing case law; Sedgwick lists eight decisions where a court invoked the entire controversy doctrine when the first filed action

---

**4.** First, Pittston asserts that no New Jersey court has ever applied the entire controversy doctrine "to bar a later–filed action against a party not named in the original action where the claim against the second party is inconsistent with the theory of the case in the original lawsuit." Pl.'s Reconsideration Br. at 3. Second, Pittston contends that the Court's decision "runs against the current of New Jersey state courts, which have shown considerable reluctance to extend the par-

ty-joinder component (as distinct from the claim joinder component) of the entire controversy doctrine to the judgment of other courts." *Id.* at 6. Finally, Pittston maintains that the Court's opinion undermines the purposes of the entire controversy doctrine—judicial economy, efficiency and fairness to the litigants—in that the opinion would compel plaintiffs "to consider joining everyone under the sun." *Id.* at 7.

was still pending.[5] *See* Def.'s Br. of the Issues Presented by the *Rycoline* Decision ("Def.'s *Rycoline* Br.") at 3 and n. 2. In particular, Sedgwick exclaims that

> the *Rycoline* decision is squarely contradicted (and therefore necessarily mooted as an authoritative interpretation of New Jersey law) by the February 26, 1997 decision of the New Jersey Supreme Court in *Gelber v. Zito Partnership,* 147 N.J. 561, 688 A.2d 1044 (1997), which was not cited in *Rycoline,* presumably because it was issued after briefing and argument in *Rycoline.*

Def.'s *Rycoline* Br. at 1.

As to *Gelber,* the Court notes that the Third Circuit issued *Rycoline* almost a month after the New Jersey Supreme Court issued *Gelber.* Sedgwick opines that the Third Circuit was unaware of *Gelber* when it released *Rycoline* and implicitly argues that had the Third Circuit been aware of *Gelber,* the result in *Rycoline* would have been different. The Court, however, is unwilling to adopt Sedgwick's guesswork. Indeed, the Court views as severely improbable that the Third Circuit overlooked a purportedly controlling decision of the New Jersey Supreme Court, which was released four weeks before the Third Circuit released its opinion.[6] Nevertheless, in the interests of completeness, the Court will address the merits of *Gelber* and discuss why that decision does not contradict *Rycoline.*

In *Gelber,* a homeowner commenced an action for damages against an architect in August 1991 relating to defective construction of a house (the "August 1991 Action"). *See Gelber,* 147 N.J. at 563, 688 A.2d at 1045. While that action was pending, the contractor who built the home instituted an arbitration proceeding against the homeowner (the "Arbitration"). In the Arbitration, the homeowner field a counterclaim for defective performance and the contractor opposed the counterclaim on the grounds that the architect was responsible for some of the damages. The Arbitration was concluded in October 1992 in favor of the homeowner. In November 1992, after the contractor had refused to pay the Arbitration award, the homeowner commenced a confirmation action.

The architect became aware of the filing of the confirmation action, and he sought dismissal of the August 1991 Action on the grounds that the homeowner's counsel did not inform the court or the architect's counsel of the pendency of the Arbitration, in violation of New Jersey Rule 4:5–1(b)(2), which creates a continuing duty to inform the court and opposing parties of any other pending litigation or arbitration proceedings. *See id.* at 564, 688 A.2d at 1045. Accordingly, the architect sought to dismiss the homeowner's complaint in the August 1991 Action based upon the entire controversy doctrine for failure to comply with Rule 4:5–1(b)(2).

The trial court invoked the entire controversy doctrine and granted the architect's motion to dismiss the August 1991 Action. The Appellate Division affirmed.

On February 27, 1997, the New Jersey Supreme Court affirmed the trial court's invocation of the entire controversy doctrine. The court held that the failure to provide notice to the architect of the pending arbitration proceeding, which involved claims that the architect could be partly responsible for, served to bar claims by the homeowner against the architect, when such claims arose

---

**5.** The decisions, as listed by Sedgwick, include the following: (1) *Gelber v. Zito Partnership,* 147 N.J. 561, 688 A.2d 1044 (1997); (2) *Mortgagelinq,* 142 N.J. 336, 662 A.2d 536; (3) *DiTrolio v. Antiles,* 142 N.J. 253, 662 A.2d 494 (1995); (4) *Petrocelli v. Daniel Woodhead Co.,* 993 F.2d 27, 28 (3d Cir.1993); (5) *Mori v. Hartz Mountain Dev. Corp.,* 193 N.J.Super. 47, 472 A.2d 150 (App.Div.1983); (6) *Kelly,* 927 F.Supp. 797 (D.N.J.1996), *aff'd on other grounds,* 107 F.3d 1073 (3d Cir.1997); (7) *Gross v. Cohen DuFour & Assocs.,* 273 N.J.Super. 617, 642 A.2d 1074 (Law Div.1993); and (8) *Airwork Corp. v. Energy Main-*

*tenance Corp.,* 1993 WL 534329, 1993 U.S. Dist. LEXIS 18040 (D.N.J. Dec. 22, 1993).

**6.** Similarly, the Court rejects Sedgwick's invitation to consider the seven other cases cited in Sedgwick's brief which purport to undermine *Rycoline. See* Def.'s *Rycoline* Br. at 3 n. 2. Each of those opinions was, at a minimum, a year old when the Third Circuit released *Rycoline.* In essence, Sedgwick asks this Court to substitute its interpretation of those decisions for that of the Third Circuit. Obviously, the Court is not free to do so. *See Vujosevic,* 844 F.2d at 1030 n. 4.

from facts which formed the basis of the homeowner's suit against the contractor: "there has been a sufficient showing of prejudice to the architect, resulting from violation of the notice requirements of Rule 4:5–1, to warrant a measured application of the entire controversy doctrine." *Id.* at 566, 688 A.2d at 1046.

Pittston argues that the legal and factual issues in *Gelber* are inapposite to the present action. The Court agrees. *Gelber* focused on the narrow issue of preclusionary effect of a party's failure to advise the court and an adverse party of a parallel proceeding involving issues being litigated as to the adverse party's liability or responsibility. The present action does not involve any simultaneous pending litigation or proceeding of which Pittston was required to inform the Court or Sedgwick. In fact, Sedgwick was fully aware of the first filed action (the "Tankport Action"); [7] several of its employees were deposed in the Tankport Action and Sedgwick was undoubtedly aware of the possible ramifications the Tankport Action could have on its own exposure to liability.

At most, *Gelber* can be interpreted to *imply* that the entire controversy doctrine may be applied prior to entry of final judgment in the first filed action. In view of the New Jersey Appellate Division's decision in *Kaselaan*, which explicitly contradicts any such implication, the Third Circuit in *Rycoline* refused to adopt a similar inference arising from the facts in *Mortgagelinq.* Even if this Court were to conclude that the Third Circuit failed to consider *Gelber*, it would be improper for this Court to latch on to an implication in *Gelber* that is akin to the implication in *Mortgagelinq* which the Third Circuit flatly rejected.

Therefore, because the Court cannot conclude that the Third Circuit overlooked *Gelber* or other case law, and because *Gelber* is nevertheless inapposite to the present case, the Court rejects Sedgwick's first argument that *Rycoline* does not require vacating the Summary Judgment Opinion.

7. For a thorough discussion of the Tankport Action, see *The Pittston Co. v. Allianz Insurance Co.,*

## B. Sedgwick's Second Argument as to Why *Rycoline* Does Not Require Vacating the Summary Judgment Opinion

As a second argument as to why *Rycoline* does not require vacating the Summary Judgment Opinion, Sedgwick asserts that even under *Rycoline*, there was sufficient finality in the Tankport Action to support invoking the entire controversy doctrine to bar Pittston's claims against Sedgwick in the second filed action. *See* Def.'s *Rycoline* Br. at 7–10.

Sedgwick's second argument, however, ignores the fact that this Court previously determined, under New Jersey law, that there has been no final judgment entered in the Tankport Action for purposes of invoking the entire controversy doctrine. *See* Summary Judgment Opinion, 1996 WL 617139, *6–7. Nothing in *Rycoline* suggests that this Court should revisit that issue and, indeed, the Court refuses to do so. Because this Court previously held that no final judgment has been entered in the Tankport Action and because Sedgwick fails to satisfy the standard for reconsideration with respect to that issue, the Court will not reconsider its prior holding.

## C. Result of Pittston's Motion for Reconsideration

Based on the above, the Court finds that *Rycoline* controls the issue of whether the entire controversy doctrine may be applied prior to entry of final judgment in the first filed action. Because *Rycoline* resolved that question in the negative and because the relevant parts of this Court's Summary Judgment Opinion directly contradict the holding in *Rycoline*, the Court will vacate its October 18, 1996 Order granting summary judgment in favor of Sedgwick on entire controversy doctrine grounds. In addition, the Court will vacate Parts 2C and 2D of the Discussion section of the Summary Judgment Opinion. As discussed above, the Court finds no reason to reconsider the balance of that Opinion.

905 F.Supp. 1279 (D.N.J.1995) and the Summary Judgment Opinion.

## III. Sedgwick's Motion for Summary Judgment on Statute of Limitations Grounds

Sedgwick initially moved for summary judgment on two grounds: (1) entire controversy doctrine and (2) statute of limitations. In the Summary Judgment Opinion, the Court granted summary judgment on entire controversy doctrine grounds and never reached Sedgwick's statute of limitations argument. *See* Summary Judgment Opinion at *11 n. 12. Because the Court will vacate the prior Order of summary judgment based on entire controversy doctrine grounds, the Court now addresses for the first time Sedgwick's Motion for Summary Judgment on· statute of limitations grounds.

■ The threshold issue to be decided by the Court is whether the New York or the New Jersey statute of limitations period applies to this action.[8] Sedgwick argues in favor of the former; Pittston argues the latter.

■ A federal court sitting in a diversity action applies the forum state's choice of law rules. *See Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991). Under New Jersey law, choice of law is made on an issue by issue basis. *See Veazey v. Doremus*, 103 N.J. 244, 248, 510 A.2d 1187, 1189 (1986). "It is thus conceivable that the law of one jurisdiction may apply to one issue in a matter and the law of a second jurisdiction to another." *Grossman v. Club Med Sales, Inc.*, 273 N.J.Super. 42, 51, 640 A.2d 1194, 1198–99 (App.Div.1994). Consequently, that this Court previously held that New Jersey law would govern insurance coverage issues, *see The Pittston Co. v. Allianz Ins. Co.*, 795 F.Supp. 678 (D.N.J.1992), is not dispositive of the issue of choice of law governing professional liability issues.

■ New Jersey follows the traditional conflict of laws rule whereby the statute of limitations of the forum governs unless the limitations period is a condition of the cause of action. *See O'Keeffe v. Snyder*, 83 N.J. 478, 490, 416 A.2d 862, 868 (1980); *see also Restatement (Second) of Conflicts* § 143 (the "*Restatement*"). In other words, New Jersey courts generally treat the statute of limitations as a procedural matter and apply the New Jersey statute of limitations. *See Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 140, 305 A.2d 412, 417 (1973). Under special circumstances, however, New Jersey recognizes an exception to the general rule. *See id.* at 140–41, 305 A.2d at 418. The exception has been described as "limited and special." *O'Keeffe*, 83 N.J. at 490, 416 A.2d at 868.

In *Heavner*, the New Jersey Supreme Court held that a foreign state's statute of limitations may be applied when: (1) the cause of action arises in another state; (2) the parties are all present in and amendable to the jurisdiction of that state; (3) New Jersey has no substantial interest in the matter; (4) the substantive law of the foreign state is to be applied; and (5) the foreign state's limitation period has expired at the time suit is commenced in New Jersey. *See* 63 N.J. at 141, 305 A.2d at 418. Post-*Heavner* decisions by New Jersey state courts have held that the statute of limitations choice of law determination articulated by *Heavner* is essentially a "governmental interest" test. *See e.g., Washington v. Systems Maintenance Corp.*, 260 N.J.Super. 505, 509, 616 A.2d 1352, 1354 (Law Div.1992); *Pine v. Eli Lilly & Co.*, 201 N.J.Super. 186, 191, 492 A.2d 1079, 1081 (App.Div.1985); *cf. Heavner*, 63 N.J. at 141, 305 A.2d at 418 ("We presently restrict our conclusion [that the foreign state's statute of limitations applies] to the factual pattern identical with or akin to that in the case before us, for there may

---

8. Sedgwick asserts that the Court may determine that the New York, New Jersey or Connecticut statute of limitations is applicable. *See* Def.'s Br. at 26–27. As pointed out by Pittston, however, Sedgwick offers sparse argument in favor of choosing Connecticut's statute of limitations. *See* Pl.'s Br. in Opp. at 22 n. 8. Indeed, a fair reading of Sedgwick's written submissions indicates that Sedgwick does not forcefully argue for Connecticut law. Instead, Sedgwick adamantly contends that the Court should apply the New York statute of limitations. Naturally, then, Pittston focuses its argument on why the Court should apply the New Jersey statute of limitations. In the absence of meaningful argument by either party as to why the Court should apply the Connecticut statute of limitations, the Court will limit its discussion to the true dispute—whether the New York or the New Jersey statute of limitations period applies here.

well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse.").

When placed in juxtaposition with the facts of this case, the *Heavner* factors lead this Court to conclude that the New York statute of limitations applies.

With respect to the first *Heavner* factor, the Court finds that the cause of action arose in New York. The parties, as well as the Court's own research, uncovered a dearth of case law discussing where an action for professional malpractice arises. Both parties attempt to resolve the issue under a "contacts" analysis; each party highlights the contacts that each state has with the circumstances of the case. Pittston, for example, argues that, because the insured property is in New Jersey, the Court may conclude that the cause of action arose in New Jersey. *See* Pl.'s Br. in Opp. at 14. Pittston, however, cites no support for that premise. Notably, the contacts approach overlaps the third and fourth *Heavner* factors, which as discussed below, support application of the New York statute of limitations. No contrary result occurs with respect to the first *Heavner* factor.

Moreover, notwithstanding the parties' contacts analysis, it seems anomalous to hold that a cause of action for professional malpractice arises in a state other than the state in which the professional is located and in which the professional performs. Here, Sedgwick was located in New York, and the communications between Sedgwick and Pittston with respect to the placement of the relevant insurance policies occurred between Sedgwick in New York and Pittston in either New York or Connecticut. *See* Def.'s Statement of Undisputed Material Facts ("SMF") ¶ 15. Further, the communications between Sedgwick and the insurance carriers took place in New York. *See* Def.'s SMF ¶¶ 19–23.

Therefore, under the circumstances of this case and for all of the above reasons, the Court holds that an insurance broker malpractice cause of action arises in the jurisdiction in which the broker resides and allegedly improperly performed its services—in this case, New York.

As to the second *Heavner* factor, the Court determines that both Sedgwick and Pittston are amenable to jurisdiction in New York. It is undisputed that Sedgwick is amenable. *See* Def.'s SMF ¶ 4.[9] Pittston, however, argues that it is not amenable to jurisdiction in New York because it closed its New York office in 1977, prior to retaining Sedgwick to procure the Insurance policies. *See* Pl.'s Br. in Opp. at 15. Other facts, however, indicate that Pittston is specifically amenable to jurisdiction in New York: Pittston met with Sedgwick in New York to discuss retaining Sedgwick as a broker, *see* Def.'s SMF ¶ 14; Pittston wrote letters to Sedgwick in New York to discuss the insurance policies, and otherwise communicated with Sedgwick in New York, *see id.* ¶¶ 14–15, 25, 33 and 43; and Pittston met with the insurance underwriters in New York.[10] Consequently, the Court finds that Pittston and Sedgwick are both amenable to jurisdiction in New York.

As to the third *Heavner* factor, the Court holds that New Jersey does not have a sufficiently substantial interest in Pittston's professional malpractice claim to warrant applying New Jersey's statute of limitations. Pittston argues at length that New Jersey has a substantial interest in this matter because (1) the insured property is in New Jersey and (2) New Jersey "has an interest in securing financial resources for the remediation of a New Jersey site and to compensate New Jersey victims of pollution." *See* Pl.'s Br. in Opp. at 15–22. In support of its argument, Pittston analogizes to this Court's choice of law discussion in the coverage case, *see. e.g., id.* at 16 (citing *The Pittston Co.*, 795 F.Supp. at 684–85), and reviews *Restatement* sections 6, 188 and 193,

---

9. Sedgwick submitted a fifty-five paragraph statement of undisputed facts. Pittston submitted a responsive statement of material facts, which disputed only four of Sedgwick's fifty-five assertions. In essence, the vast majority of facts in this matter are undisputed.

10. It also appears from the record that Pittston may be generally amenable to jurisdiction in New York as a result of doing substantial business in New York. *See* Def.'s Reply Br. at 11 and n. 10.

as this Court did in concluding that New Jersey law presumptively applies to all coverage issues. *See The Pittston Co.,* 795 F.Supp. at 682–93. The gravamen of Pittston's argument is that New Jersey has the same interests in the coverage context as it does in the professional malpractice context.

The Court disagrees; the state interests implicated in an environmental insurance coverage case where the contaminated property is located within the state are distinct from those implicated in a professional malpractice case where the professional at issue resides and performs outside the state. In the former case, the overriding issue is who is liable for the costs associated with the environmental clean-up. In such a case, the state in which the property is located certainly has an interest in ensuring that funds are available to cover the cleanup costs. In the latter case, the primary issue is the alleged improper performance of a professional insurance broker who has minimal, if any, contacts with the state. There, the state in which the broker resides and performs has the significantly greater interest in ensuring that the broker complies with any relevant contract and satisfies reasonable performance standards (*i.e.,* does not commit professional malpractice).[11] Indeed, another district court in the Third Circuit addressing a choice of law issue under facts akin to those here recently held that the state in which the broker resides has a greater interest than the state in which the uninsured loss occurred, particularly when (1) the discussions regarding the obtaining of insurance took place in the state where the broker was located and (2) the broker's alleged failure to perform its obligations also took place in that state. *See Gallelli v. Professional Ins., Management,* 1994 WL 45729, *4 (E.D.Pa. Feb.10, 1994).

In *Gallelli,* the plaintiff, a New Jersey resident, engaged the defendant, a New Jersey insurance broker, to obtain insurance on a parcel of Pennsylvania property. Damage occurred to the property, which was not covered by the insurance policy obtained by the broker on plaintiff's behalf. In holding that New Jersey law applied to plaintiff's damages claims, the Court held that New Jersey had a greater interest in the matter than Pennsylvania: "New Jersey also has a greater interest than Pennsylvania in governing the conduct of New Jersey insurance brokers, particularly where the discussions regarding the obtaining of insurance take place in New Jersey. *While Pennsylvania may have an interest in the insurance of Pennsylvania property, that is not an issue in this case because the insurance policy for the property at issue does not cover the loss.*" *Id.* (emphasis added).

The Court agrees with the statement in *Gallelli* and rejects Pittston's argument to the contrary. Accordingly, the Court concludes under the circumstances of this case that the fourth *Heavner* factor weighs in favor of applying the New York statute of limitations.

■ As to the fourth *Heavner* factor, the Court finds that New York substantive law would govern the professional liability issues. With respect to choice of law determinations in professional liability cases, New Jersey applies the "governmental interest" test. *See Performance Motorcars of Westchester, Inc. v. KPMG Peat Marwick,* 274 N.J.Super. 56, 60, 643 A.2d 39, 40 (App.Div.), *cert. denied,* 139 N.J. 183, 652 A.2d 172 (1994). Without delving into a discussion of that test, the Court is comfortable concluding that, under the circumstances of this case, New York would have a greater interest than New Jersey in regulating the conduct of Sedgwick, a New York insurance broker whose alleged failure to obtain proper insurance took place in New York. *See Gallelli,* 1994 WL 45729, *4.

Finally, the Court finds that the fifth *Heavner* factor supports applying the New York statute of limitations; the New York statute of limitations had expired at the time Pittston filed the present action in this Court.

■ In its summary judgment brief, Sedgwick sets forth the reasons why Pitt-

---

11. Presumably, the broker is licensed by the state or, at least, subject to state insurance regulations, which would form a basis for such standards.

ston's claims are barred by New York's statute of limitations. *See* Def.'s Br. at 29–30. New York has a six-year statute of limitations for actions alleging insurance broker malpractice in the performance of contractual obligations. *See T & N PLC v. Fred S. James & Co. of New York, Inc.*, 29 F.3d 57, 59 (2d Cir.1994). Although harsh in result, an insured's cause of action against an insurance broker for failure to procure the requested coverage accrues no later than when the policy is issued by the insurer. *See id.* Thus, unlike New Jersey, there exists no "discovery rule" in New York which would toll the start of the limitations period until such time as the insured should have been aware that the broker failed to procure adequate insurance coverage.

In its brief, Pittston does not contest that its claims are time barred under New York's statute of limitations. Indeed, the record belies any such argument. Pittston's complaint alleges that Sedgwick wrongfully failed to obtain coverage with respect to the comprehensive marine liability package insurance Policies (the "CMLPs") put at issue in the Tankport Action. *See* Compl. ¶¶ 5 and 8. In the Tankport Action, Pittston sued insurance carriers subscribing to CMLPs issued between January 1978 and June 1983. Thus, the relevant policies were issued more than six years prior to the date on which Pittston filed the present action—April 3, 1996.

Consequently, pursuant to the New York statute of limitations, which under *Heavner* is properly applied in this case, Pittston's claims against Sedgwick are time barred. Summary judgment in favor of Sedgwick is therefore appropriate.

## CONCLUSION

For the reasons expressed herein, the Court will:

(1) grant Pittston's Motion for Reconsideration; (2) vacate Parts 2C and 2D of the Discussion section of the Summary Judgment Opinion dated October 18, 1996; (3) vacate summary judgment in favor of Sedgwick on entire controversy grounds; and (4) affirm summary judgment in favor of Sedgwick on statute of limitations grounds. Consistent with this Opinion, the Court's October 18, 1996 Order granting Sedgwick's Motion for Summary Judgment will be affirmed.

An appropriate Order is attached.

## *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 22nd day of July, 1997

ORDERED that The Pittston Company's Motion for Reconsideration is granted;

ORDERED that Parts 2C and 2D of the Discussion section of the Court's Opinion dated October 18, 1996 are vacated; and

ORDERED that summary judgment in favor of defendant Sedgwick James of New York, is affirmed.